UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————— x

TROYT M. VICTORSON, Individually and on :   Civil Action No. 1:25-cv-06028
Behalf of All Others Similarly Situated, :  
:   <u>CLASS ACTION</u>
      Plaintiff, :  
:   COMPLAINT FOR VIOLATIONS OF THE
:   FEDERAL SECURITIES LAWS
   vs. :  
:  
:  
JAMES ALPHA FUNDS TRUST d/b/a :  
EASTERLY FUNDS TRUST, MANAGED :  
PORTFOLIO SERIES, EASTERLY :  
INVESTMENT PARTNERS LLC, :  
PRINCIPAL STREET PARTNERS, LLC, :  
EASTERLY SECURITIES LLC, QUASAR :  
DISTRIBUTORS, LLC, TROY E. WILLIS, :  
CHARLIE S. PULIRE, DARRELL CRATE, :  
NEIL MEDUGNO, A. CLAYTON SPENCER, :  
MICHAEL MONTAGUE, ROBERT J. KERN, :  
DAVID A. MASSART, LEONARD M. :  
RUSH, DAVID M. SWANSON, BRIAN :  
WIEDMEYER, and BENJAMIN EIRICH, :  
:  
      Defendants. :  
:  
————————————————— x   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Troyt M. Victorson ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things: a review of U.S. Securities and Exchange Commission ("SEC") filings by James Alpha Funds Trust d/b/a Easterly Funds Trust (the "Trust") and Managed Portfolio Series; media and analyst reports regarding the Easterly ROCMuni High Income Municipal Bond Fund f/k/a Principal Street High Income Municipal Fund (the "Fund"), its current investment adviser Easterly Investment Partners LLC ("Easterly") and its former investment adviser Principal Street Partners, LLC ("PSP"), and their affiliates; press releases and shareholder communications regarding the Fund, Easterly, PSP, and their affiliates; and other publicly available information regarding the Trust, the Managed Portfolio Series, the Fund, Easterly, PSP, and the municipal bond industry.  Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased shares of the Fund between May 5, 2023 and June 12, 2025, inclusive (the "Class Period"), seeking to pursue remedies under §§11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act").

2.      This lawsuit seeks to recover damages for investors under the 1933 Act, which was passed by Congress in the hopes of restoring investor confidence after corporate scandals and the stock market crash of 1929.  The federal securities laws under which this case is brought were designed to ensure accurate disclosures to protect investors from false and misleading statements such as those contained in the offering materials for the Fund.

## JURISDICTION AND VENUE

3.    The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the 1933 Act (15 U.S.C. §§77k, 77l(a)(2), and 77o).

4.    This Court has jurisdiction over this action pursuant to §22 of the 1933 Act (15 U.S.C. §77v) and 28 U.S.C. §1331.

5.    Venue is proper in this District pursuant to §22 of the 1933 Act and 28 U.S.C. §1391(b) and (c).  The Trust maintains its principal place of business in this District, the acts and conduct complained of herein occurred in substantial part in this District, the offerings of Fund shares were marketed in this District, and all defendants have sufficient contacts within this District or otherwise purposefully availed themselves of benefits of this District.

## PARTIES

**Plaintiff**

6.    Plaintiff Troyt M. Victorson purchased shares of the Fund pursuant to the Offering Materials (defined herein) during the Class Period, as set forth in the attached certification, and was damaged thereby.

**Corporate Defendants**

7.    Defendant Trust is registered under the Investment Company Act of 1940 ("ICA") as an open-ended investment company with several investment funds, including the Fund.  The Trust is organized as a Delaware statutory trust and maintains its principal place of business in New York City, New York.  The business of the Trust is managed under the direction of its Board of Trustees and, pursuant to an investment advisory agreement, Easterly.  The Fund is a mutual fund within the Trust's series of mutual funds.  There are three separate share classes of the Fund, which primarily differ in terms of minimum purchase requirements and fee structures: A Class (ticker: RMJAX); Investor Class (ticker: RMHVX); and Institutional Class (ticker: RMHIX).  In general, shareholders

can purchase, exchange, or redeem shares of the Fund on any day the New York Stock Exchange ("NYSE") is open for business.

8.      Defendant Managed Portfolio Series is the predecessor registrant for the Fund.  Like defendant Trust, Managed Portfolio Series is a Delaware statutory trust registered under the ICA as an open-ended investment company with several investment funds, including the Fund.   In connection with an October 2024 reorganization, the Fund was renamed and its investment advisory team moved from PSP to Easterly.  The three share classes of the Fund prior to the reorganization were: A Class (ticker: GSTFX); Investor Class (ticker: GSTEX); and Institutional Class (ticker: GSTAX).

9.      Defendant Easterly is the investment adviser to the Fund.  Easterly is responsible for managing the Fund's investments, executing transactions, valuing the Fund's assets, reporting on the valuation of the Fund's assets, and providing related advisory services in accord with the Fund's investment objectives and policies.  In exchange for these services, Easterly receives fees and expenses from the Fund.

10.      Defendant PSP was the investment adviser of the Fund prior to the October 4, 2024 reorganization.  Prior to this reorganization, PSP provided investment advisory services to the Fund of essentially the same nature and character as defendant Easterly has provided since the reorganization.  Notably, the two primary investment professionals responsible for the Fund's investment activities, defendant Troy E. Willis and defendant Charlie S. Pulire, were employed by PSP and transferred to Easterly in connection with the reorganization, thereby providing continuous management of the Fund's affairs and investment activities during the Class Period.

11.      Defendant Easterly Securities LLC ("Easterly Securities") serves as the principal underwriter and national distributor for the shares of the Fund, offering shares of the Fund to

investors on a continuous basis. Easterly Securities is an affiliate of the Fund's investment adviser, defendant Easterly.

12.     Defendant Quasar Distributors, LLC ("Quasar") served as the principal underwriter and national distributor for the shares of the Fund prior to the October 2024 reorganization. Like defendant Easterly Securities, Quasar offered shares of the Fund on a continuous basis during the Class Period.

**Individual Defendants**

13.     Defendant Troy E. Willis ("Willis"), together with defendant Charlie S. Pulire, is the portfolio manager for the Fund and, as such, manages the Fund's day-to-day affairs. Willis managed the Fund as the Chief Investment Officer, Municipal Bond Strategies of PSP prior to the October 2024 reorganization and kept the same title and responsibilities as part of Easterly after the reorganization. For compensation, Willis receives a fixed salary and also maintains a profit interest in the Fund's investment adviser entitling him to a share of the adviser's earnings for the strategies he manages, as well as potential equity dividends.

14.     Defendant Charlie S. Pulire ("Pulire"), together with defendant Willis, is the portfolio manager for the Fund and, as such, manages the Fund's day-to-day affairs. Pulire managed the Fund as a Senior Portfolio Manager, Municipal Bond Strategies of PSP prior to the reorganization and kept the same title and responsibilities as part of Easterly after the reorganization. For compensation, Pulire receives a fixed salary and also maintains a profit interest in the Fund's investment adviser entitling him to a share of the adviser's earnings for the strategies he manages, as well as potential equity dividends.

15.     The defendants listed in ¶¶13-14 above, together with PSP prior to the October 2024 reorganization and Easterly after the reorganization, are collectively referred to herein as the "Investment Adviser Defendants." The Investment Adviser Defendants were responsible for the

preparation and presentation of the information contained in the Fund's filings with the SEC regarding the Fund's investment performance, assets, valuation of assets, trading activities, investment practices, risk management, and related activities during the Class Period. According to the Offering Materials, the Investment Adviser Defendants were "responsible for overseeing the day-to-day business affairs of the Trust" during the Class Period. The Offering Materials also stated that the Fund's

> Adviser, as the valuation designee, performs the fair value determinations relating to Fund investments and is responsible for periodically assessing any material risks associated with the determination of the fair value of a Fund's investments; establishing and applying fair value methodologies; testing the appropriateness of fair value methodologies; and overseeing and evaluating third-party pricing services.

16.      Defendant Darrell Crate ("Crate") serves as the President and Chairperson of the Board of Trustees of the Trust. Crate is also a managing principal of Easterly Asset Management LP, an affiliate of defendant Easterly. Crate signed the registration statements and prospectuses of the Fund once it became part of the Trust and managed by Easterly.

17.      Defendant Neil Medugno ("Medugno") serves as a Trustee of the Trust. Medugno signed the registration statements and prospectuses of the Fund once it became part of the Trust and managed by Easterly.

18.      Defendant A. Clayton Spencer ("Spencer") serves as a Trustee of the Trust. Spencer signed the registration statements and prospectuses of the Fund once it became part of the Trust and managed by Easterly.

19.      Defendant Michael Montague ("Montague") serves as Chief Financial Officer of Easterly Securities and as Treasurer and Principal Financial Officer of the Trust. Montague signed the registration statements and prospectuses of the Fund once it became part of the Trust and managed by Easterly.

20.    Defendant Robert J. Kern ("Kern") served as the Chairperson of the Board of Trustees of the Managed Portfolio Series.  Kern signed the registration statements and prospectuses of the Fund when it was part of the Managed Portfolio Series and managed by PSP.

21.    Defendant David A. Massart ("Massart") served as a Trustee of the Managed Portfolio Series.  Massart signed the registration statements and prospectuses of the Fund when it was part of the Managed Portfolio Series and managed by PSP.

22.    Defendant Leonard M. Rush ("Rush") served as a Trustee of the Managed Portfolio Series.  Rush signed the registration statements and prospectuses of the Fund when it was part of the Managed Portfolio Series and managed by PSP.

23.    Defendant David M. Swanson ("Swanson") served as a Trustee of the Managed Portfolio Series.  Swanson signed the registration statements and prospectuses of the Fund when it was part of the Managed Portfolio Series and managed by PSP.

24.    Defendant Brian Wiedmeyer ("Wiedmeyer") served as President and Principal Executive Officer of the Managed Portfolio Series.  Wiedmeyer signed the registration statements and prospectuses of the Fund when it was part of the Managed Portfolio Series and managed by PSP.

25.    Defendant Benjamin Eirich ("Eirich") served as Treasurer, Principal Financial Officer, and Principal Accounting Officer of the Managed Portfolio Series.  Eirich signed the registration statements and prospectuses of the Fund when it was part of the Managed Portfolio Series and managed by PSP.

26.    The defendants listed in ¶¶16-25 above are collectively referred to herein as the "Trustee Defendants."  The Trustee Defendants comprised the board and/or were executives of the Trust or of the Managed Portfolio Series (as detailed herein) during the Class Period, with the power

to conduct, operate, and carry on the business of the Trust or the Managed Portfolio Series, including responsibility for overseeing the Investment Adviser Defendants.

## SUBSTANTIVE ALLEGATIONS

**Background to the Fund**

27.     As a mutual fund, the Fund is subject to an extensive regulatory framework designed to safeguard the investing public.  For example, a mutual fund must register as an investment company under the ICA and securities offered to the public must be registered under the 1933 Act. Mutual fund advisers must also file periodic reports with the SEC, provide enhanced disclosures to mutual fund investors, act in the best interests of their clients, and implement risk management and operational controls and procedures.

28.     Unlike stocks, whose price is determined through trading on an exchange, mutual fund shares must be priced daily based on the fund's net asset value ("NAV").  Investors purchase shares from the fund and generally must be able to freely redeem their shares with the fund.  Because they must maintain liquidity to satisfy share redemptions, mutual funds are also subject to various investment restrictions, including limits on the amount of risk they may take on, their ability to concentrate investments in an issuer or industry, the amount of leverage they can be exposed to, and the types of securities they can invest in.

29.     Defendants Willis and Pulire are longtime investment professionals specializing in municipal bond strategies.  Municipal bonds are debt obligations issued by states, cities, counties and other governmental entities to raise funds to pay for public projects.  Types of municipal bonds include: (i) general obligation bonds, which offer principal and interest secured by the full faith and credit of the issuer and usually supported by the issuer's taxing power; (ii) revenue bonds, which have principal and interest secured by particular streams of revenue such as tolls, charges, or rents paid by users of the facility built with bond proceeds; and (iii) insured bonds backed by an insured

guarantee from a municipal bond insurer.  Municipal bonds are generally considered safer than corporate stocks or bonds because of the relatively low risk of default.  In addition, interest income earned from municipal bonds are generally tax-exempt at the federal level and may also be tax-exempt at the state level.

30.    The Fund commenced operations in September 2017.  The Fund's primary investment objective is to provide current income exempt from regular federal income tax, and its secondary investment objective is to seek total return.  The "Fact Sheet" for the Fund, available on Easterly's website, states that the Fund "[s]eeks to provide long-term, yield-driven total return relying mostly on fundamental credit analysis by building a diversified high-yield portfolio focusing on overlooked and under-appreciated sectors of the high-yield municipal bond market."[1]

31.    The Fund is purportedly heavily diversified with restrictions on the Fund's ability to invest more than 5% of its assets in the securities of any one issuer, 25% of its assets in the securities of issuers in a particular industry or group of industries, and on purchasing more than 10% of any class of the outstanding voting securities of any issuer.  The Fund is also purportedly prohibited from investing more than 15% of its net assets in illiquid investments.  Under normal market conditions, the Fund's strategy involves investing at least 80% of its net assets (plus borrowings for investment purposes) in tax exempt debt securities, with a majority invested in debt securities that are rated below investment grade (aka "junk bonds"), and without limitations on the Fund's ability to invest in municipal securities issued by or on behalf of states and local governmental authorities throughout the United States and its territories.  Thus, the Fund offered investors the ability to invest in high-yield debt securities offering tax-exemption benefits ostensibly combined with the substantial risk mitigation offered by the Fund's highly diversified strategy, exposure to municipal debt securities,

---

[1]    The Fact Sheet is available at https://funds.easterlyam.com/rocmuni-high-income-municipal-bond-fund/ (the "Fund Website").

and its operating and reporting structure as a highly regulated mutual fund subject to the strictures of the ICA and the 1933 Act.

32.    On April 11, 2024, Easterly announced that it had entered into an agreement to acquire the municipal bond strategies team of PSP, consisting of defendants Willis and Pulire.  The release stated that defendants Willis and Pulire would continue to manage the Fund for Easterly, which Easterly described as applying "a value-based security selection to construct a diversified, higher-yielding portfolio that seeks to achieve strong long-term total returns" and appealing to "institutional and private wealth investors seeking tax-free income and yield-driven total returns." Defendant Crate praised the team's "ability to achieve consistent performance and generate alpha" in various market environments, stating in pertinent part as follows:

> Troy Willis and Charlie Pulire have a solid track record of strong investment performance that will expand Easterly's active fixed income solutions, offering more optionality to our investors. . . . This team's ability to achieve consistent performance and generate alpha over full market cycles is impressive, and we are excited to leverage their expertise.

33.    The transaction closed on October 4, 2024.  While the trustees and the ostensible management of the Fund changed names, the day-to-day operations and general investment strategies and purported protocols and procedures of the Fund remained the same, as defendants Willis and Pulire continued in their roles as investment advisers and portfolio managers to the Fund.

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE OFFERING MATERIALS

34.    During the Class Period, defendants issued and distributed the following documents in connection with the continuous offering of shares of the Fund:

(a)    The semi-annual reports of the Fund filed with the SEC on Form N-CSRS on May 5, 2023 (with an amendment filed on December 27, 2023), May 9, 2024, and May 9, 2025;

(b)     The statement of additional information ("SAI") for the Fund filed with the SEC on Form 497 on May 19, 2023;

(c)     The annual reports of the Fund filed with the SEC on Form N-CSR on November 24, 2023 and November 12, 2024;

(d)     The post-effective amendments of the registration statement for the Fund filed with the SEC on Form 485POS on December 28, 2023, August 29, 2024, October 4, 2024, and December 30, 2024;

(e)     The summary prospectuses of the Fund filed with the SEC on Form 497K on January 2, 2024 and October 11, 2024;

(f)     The monthly portfolio investment reports filed with the SEC on Forms NPORT-P and NPORT-P/A on July 28, 2023, October 30, 2023, January 9, 2024, January 29, 2024, April 26, 2024, July 29, 2024, October 30, 2024, January 29, 2025, and April 29, 2025;

(g)     The prospectus of the Fund filed with the SEC on January 3, 2025 on Form 497;

(h)     The Fund Fact Sheet, which was used by defendants to solicit purchasers of Fund shares and made available through the Fund Website; and

(i)     The Fund "Tailored Shareholder Reports," which were also used by defendants to solicit purchasers of Fund shares and made available through the Fund Website.

35.     The documents referenced in ¶34 are collectively referred to herein as the "Offering Materials."

36.     The Offering Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation.

37.    Specifically, the Offering Materials described the "Investment Strategy" of the Fund as "[s]eek[ing] to provide long-term, yield-driven total return relying mostly on fundamental credit analysis by building a diversified high-yield portfolio focusing on overlooked and under-appreciated sectors of the high-yield municipal bond market."

38.    The Offering Materials further stated, "[i]n selecting securities for the Fund, the Adviser employs a top-down/bottom-up research approach with an emphasis on analyzing the stand-alone credit, including financials, bond covenants, management team, and underlying asset value." The Offering Materials claimed that the "below investment grade universe represents some of the best value in the fixed income markets."

39.    The Offering Materials claimed that the Fund was heavily diversified, with 134 individual portfolio holdings as of March 31, 2025.  The Offering Materials similarly represented "[t]he Fund will typically not invest more than 5% of its assets, at the time of investment, in the securities of any one obligor."   The Offering Materials further stated that the Fund "will not concentrate its investments in issuers in any one industry" and that the Fund would abide by the SEC's position that "investment of more than 25% of a fund's total assets in issuers in the same industry constitutes concentration in that industry," but that "[m]any types of municipal securities (such as general obligation, government appropriation, municipal leases, special assessment and special tax bonds) are not considered a part of any 'industry' for purposes of this policy."

40.    Similarly, prior to the October 2024 reorganization, the Offering Materials provided the following descriptions of the Fund's purportedly broad diversification:

> The High Income Fund is diversified. A diversified fund is a fund that satisfies the definition of a "diversified company" set forth in the 1940 Act.
>
> *        *        *
>
> A "diversified company" means that as to 75% of the Fund's total assets, excluding cash, government securities and securities of other investment companies,

- 11 -

(1) no more than 5% may be invested in the securities of a single issuer, and (2) the Fund may not hold more than 10% of the outstanding voting securities of a single issuer.

Because the Funds intend to qualify as "regulated investment companies" under Subchapter M of the Internal Revenue Code of 1986, as amended, (the "Code"), each Fund will limit its investments, excluding cash, cash items (including receivables), U.S. government securities and securities of other regulated investment companies, so that at the close of each quarter of the taxable year, (1) not more than 25% of a Fund's total assets will be invested in the securities of a single issuer, and (2) with respect to 50% of its total assets, not more than 5% of a Fund's total assets will be invested in the securities of a single issuer and each Fund will not hold more than 10% of such issuer's outstanding voting securities.

41.    The Offering Materials stated that the Fund had strict limitations on the proportion of

its assets that could be invested in illiquid securities, stating in pertinent part as follows:

**Illiquid Investments**

The Funds may purchase illiquid investments, which may include securities that are not readily marketable and securities that are not registered under the Securities Act. A Fund may not acquire any illiquid investments if, immediately after the acquisition, a Fund would have invested more than 15% of its net assets in illiquid investments that are assets. The term "illiquid investments" for this purpose means any investment that a fund reasonably expects cannot be sold or disposed of in current market conditions in seven calendar days or less without the sale or disposition significantly changing the market value of the investment, as determined pursuant to the provisions of Rule 22e-4 under the 1940 Act. The Funds may not be able to sell illiquid investments when the Adviser considers it desirable to do so or may have to sell such investments at a price that is lower than the price that could be obtained if the investments were more liquid. In addition, the sale of illiquid investments also may require more time and may result in higher dealer discounts and other selling expenses than does the sale of investments that are more liquid. Illiquid investments also may be more difficult to value due to the unavailability of reliable market quotations for such investments, and investments in illiquid investments may have an adverse impact on NAV.

Institutional markets for restricted securities have developed as a result of the promulgation of Rule 144A under the Securities Act, which provides a safe harbor from Securities Act registration requirements for qualifying sales to institutional investors. When Rule 144A restricted securities present an attractive investment opportunity and otherwise meet selection criteria, a Fund may make such investments. Whether or not such investments are illiquid depends on the market that exists for the particular investment. It is not possible to predict with assurance exactly how the market for Rule 144A restricted securities or any other security will develop. An investment which when purchased enjoyed a fair degree of

marketability may subsequently become illiquid.  In such event, appropriate remedies are considered to minimize the effect on a Fund's liquidity.

42.     The Offering Materials detailed how the Fund's securities were purportedly valued at their "fair value" daily, stating in pertinent part as follows:

> Generally, a Fund's securities are valued each day at the last quoted sales price on each security's primary securities exchange.  Securities traded or dealt in upon one or more securities exchanges (whether domestic or foreign, and including the National Association of Securities Dealers' Automated Quotation System ("NASDAQ")) for which market quotations are readily available and not subject to restrictions against resale shall be valued at the last quoted sales price on the primary securities exchange (or in the case of NASDAQ securities, at the NASDAQ Official Closing Price) or, in the absence of a sale on the primary exchange, at the mean between the current bid and ask prices on the primary exchange.  When a market price is not readily available, including circumstances under which Easterly determines that a security's market price is not accurate, a portfolio security is valued by the Adviser, as the Funds' valuation designee, with the assistance of a pricing committee at its fair value, as determined under procedures established by the Board. In these cases, a Fund's NAV will reflect certain portfolio securities' fair value rather than their market price.  Debt securities with remaining maturities of sixty days or less at the time of purchase may be valued at amortized cost.  The amortized cost valuation method involves valuing a debt obligation in reference to its cost rather than market forces.

43.     Regarding "Valuation Risk," the Offering Materials stated that, while received prices may differ from internal valuations, the Fund employed rigorous internal pricing methodologies and third-party verifications, stating that the Fund typically valued the municipal bonds in which it invests "using evaluated prices supplied by independent pricing services[.]  Such pricing services take into consideration a range of market-based and security specific inputs and assumptions, including price quotations from broker-dealers making markets in such instruments, transactions in comparable investments and considerations about general market conditions."

44.     The Offering Materials contained substantially similar representations regarding the Fund's valuation procedures prior to the October 2024 reorganization, stating in pertinent part as follows:

Each Fund's assets are generally valued at their market price on the valuation date and are based on valuations provided by independent pricing services consistent with the Trust's valuation procedures. When market prices are not readily available, a security or other asset is valued at its fair value as determined under fair value pricing procedures approved by the Board. The Board reviews, no less frequently than annually, the adequacy of the Fund's policies and procedures and the effectiveness of their implementation. These fair value pricing procedures will also be used to price a security when corporate events, events in the securities market and/or world events cause the Adviser to believe that a security's last sale price may not reflect its actual market value. The intended effect of using fair value pricing procedures is to ensure that the Fund is accurately priced. The Board will regularly evaluate whether the Trust's fair value pricing procedures continue to be appropriate in light of the specific circumstances of the Fund and the quality of prices obtained through the application of such procedures.

45.     The Offering Materials provided the following charts regarding the Fund's purported "Investment Performance" for various time periods as of March 31, 2025:

**Investment Performance – March 31, 2025 (%)**

|  | QTD | YTD | 1-Yr | 3 Yrs | 5 Yrs | Since Inception |
|---|---|---|---|---|---|---|
| Institutional Class (RMHIX)[1]◊ | -1.49 | -1.49 | -3.15 | -1.13 | 0.23 | 1.02 |
| Investor Class (RMHVX)[2]◊ | -1.60 | -1.60 | -3.61 | -1.66 | -0.22 | 0.57 |
| Class-A (RMJAX)[3] – Without Load | -1.55 | -1.55 | -3.38 | -1.52 | N/A | -2.44 |
| Class-A (RMJAX)[3] – With Max Load | -3.77 | -3.77 | -5.55 | -2.25 | N/A | -3.15 |
| Bloomberg High Yield Municipal Bond Index | 0.82 | 0.82 | 5.59 | 2.86 | 4.31 | 4.09 |

**Calendar Year Performance**

|  | 2024 | 2023 | 2022 | 2021 | 2020 | 2019 | 2018 | 2017 |
|---|---|---|---|---|---|---|---|---|
| Institutional Class (RMHIX)[1]◊ | 0.89 | 5.22 | -13.34 | 4.08 | -4.57 | 9.42 | 7.45 | 2.05 |
| Investor Class (RMHVX)[2]◊ | 0.24 | 4.81 | -13.82 | 3.54 | 11.53 | N/A | N/A | N/A |
| Class-A (RMJAX)[3] – Without Load | 0.66 | 5.01 | -11.03 | N/A | N/A | N/A | N/A | N/A |
| Class-A (RMJAX)[3] – With Max Load | -1.63 | 2.65 | -13.02 | N/A | N/A | N/A | N/A | N/A |
| Bloomberg High Yield Municipal Bond Index | 6.32 | 9.21 | -13.10 | 7.77 | 4.89 | 10.68 | 4.76 | 1.45 |

46.     During the Class Period, the Offering Materials stated that the Fund's total NAV was: $232.38 million as of March 31, 2025; $244.26 million as of February 28, 2025; $335.7 million as of August 31, 2024; $310.1 million as of February 29, 2024; $274.78 million as of August 31, 2023; and $242.29 million as of February 28, 2023. Periodic reports of the Fund's portfolio holdings

contained in the Offering Materials included several assets at materially inflated valuations as part of the Fund's total NAV, including municipal bonds issued for Legacy Cares, Proton International Alabama, LLC, Purecycle Technologies, and Gladieux Metals Recycling LLC.

47.    The statements identified in ¶¶37-46 were materially false and misleading when made because they failed to disclose the following adverse facts that existed at the time of the continuous offering of Fund shares during the Class Period:

(a)    That the Fund had marked tens of millions of dollars' worth of its portfolio assets at artificially inflated prices that did not reasonably reflect the fair value of those assets;

(b)    That the Fund had implemented a fundamentally flawed pricing and valuation methodology which had systematically inflated the Fund's NAV and individual asset valuations;

(c)    That the Fund was more heavily invested in illiquid assets than disclosed in the Offering Materials;

(d)    That the Fund's assets were more closely correlated and less diversified than disclosed in the Offering Materials;

(e)    That, as a result of (a)-(d) above, the Fund's stated NAV, NAV per share, individual asset valuations, and historical performance were materially overstated; and

(f)    That, as a result of (a)-(e) above, the Fund was subject to a material undisclosed risk of a sudden collapse in the price of Fund shares.

48.    Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303"), required defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105(a) ("Item 105"), required, in the "Risk Factors" section of the Offering Materials, "a

discussion of the material factors that make an investment in the registrant or offering speculative or risky" and required each risk factor to "adequately describe[] the risk."

49.    The failure of the Offering Materials to disclose that the Fund was employing fundamentally flawed pricing and valuation policies and procedures, leading to a material overstatement of the Fund's NAV and individual asset valuations, and had materially misrepresented its diversification and exposure to illiquid securities violated Item 303, because these undisclosed facts were known to defendants and would (and did) have an unfavorable impact on the Fund's income from continuing operations.  This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant factors that made an investment in the Fund speculative or risky.

50.    Although the Offering Materials included generic warnings regarding the Fund's valuation methodologies, pricing practices, and general investment risks, these representations were themselves misleading because they failed to disclose the Fund's fundamentally defective valuation policies and procedures and the risks attendant to these fundamental defects, which not only impacted individual asset valuations but also the Fund's total NAV and all of its portfolio holdings. The boilerplate warnings were insufficient to negate the misleading impression created by the misrepresentations in the Offering Materials, alleged herein, that the Fund maintained rigorous pricing and valuation policies and procedures, corroborated by independent pricing services and objective market references which were actively overseen by the Board of Trustees, with effective concentration and liquidity limits designed to effectively mitigate risks.

## EVENTS FOLLOWING THE CLASS PERIOD

51.    On June 13, 2025, the Fund surprised the market by abruptly marking down the value of Fund shares by 30%.  The per share NAV of RMHIX was marked down from $6.15 per share the prior day to $4.33 per share; the per share NAV of RMHVX was marked down from $6.19 per share

the prior day to $4.36 per share; and the per share NAV of RMJAX was marked down from $6.13 per share the prior day to $4.31 per share.  The value of Fund shares continued to plummet in subsequent days, falling to less than $3 per share within a span of just two weeks.  Hundreds of millions of dollars' worth of investor capital simply evaporated.

52.    The stunning collapse in the value of Fund shares in such a short time span is virtually unprecedented in connection with municipal bond mutual funds.  Given the purported broad diversification of the Fund's portfolio (which Offering Materials claimed included more than 130 individual assets as of March 31, 2025), its municipal bond-focused Investment Strategy, and the Fund's ostensible policies and procedures, including regarding the valuation and pricing of Fund assets, the breadth and scope of such a markdown should not be possible.  Notably, there was no sudden collapse in the municipal bond market, comparable funds did not suffer similar declines, and the two major indexes used by the Fund to gauge its success – the Bloomberg Municipal Bond Index and the Bloomberg High Yield Municipal Bond Index – actually *increased* during this time.  Rather, such a shocking destruction of wealth was possible because the Offering Materials materially misrepresented the nature of the Fund, the value of Fund investments, and the policies and procedures employed by the Fund.

53.    Industry news source *The Bond Buyer* described in an article the collapse of the Fund as a "one-off . . . fire sale" that did not reflect the wider industry.  The article stated that the "sudden selloff" "surprised" the market and was a "rare occurrence in the high-yield market."  The article stated that this sudden collapse was not indicative of market conditions but rather Fund-specific factors such as "flawed pricing," "illiquidity," and the fact that the Fund was insufficiently "diversified."  The article quoted Easterly who claimed that the Fund had "repositioned to improve liquidity," but the article observed that the Fund had in fact been forced into a "distressed trade" with

"buyers snapping up bargains on bonds that priced at sharp discounts to their valuation."  The article noted that the Fund was heavily invested in junk investments with a "lack of credit transparency" and "minimal collateral and financial information, which is often hidden in data rooms accessible only to holders who may not have an interest in making the information public."

54.     *The Bond Buyer* conveyed that market participants with knowledge of the Fund's sales had observed that the sales had reflected "very, very dramatic markdowns from where they were marked."  According to a note by Birch Creek Capital summarized in the article, "[m]any of these bonds traded at a massive discount to their eval[uated prices]."  Examples included an investor who paid ***just two cents*** for $800,000 in bonds issued by Proton International Alabama, LLC, and another who paid ***just four cents*** for $3.2 million in bonds issued by Gladieux Metals Recycling LLC – the Fund's largest position at the end of the first quarter of 2025.

55.     The total net assets of the Fund have collapsed from over $230 million as of March 31, 2025 to less than $17 million as of July 8, 2025.  This lawsuit seeks recompense under the 1933 Act for plaintiff and the Class for losses caused by the materially misleading Offering Materials.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons who purchased shares of the Fund during the Class Period and sustained damages (the "Class").  Excluded from the Class are defendants herein, the officers and directors of Easterly, PSP, the Trust, Managed Portfolio Series, Easterly Securities, or Quasar, members of the immediate families of any such excluded party, and any person, firm, trust, corporation, officer, director, or other individual or entity in which any defendant has a controlling interest.

57.     The members of the Class are so numerous that joinder of all members is impracticable.  As of September 30, 2024, there were over 44 million Fund shares outstanding.

While the exact number of Class members is unknown to plaintiff at this time, and can only be ascertained through appropriate discovery, plaintiff believes that there are at least hundreds, if not thousands, of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Fund or its agents and may be notified of the pendency of this action by mail using the form of notice similar to that customarily used in securities class actions.

58. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' conduct in violation of federal law that is complained of herein.

59. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

60. Common questions of law and fact predominate and include:

(a) Whether defendants violated the 1933 Act;

(b) Whether the Offering Materials contained false and misleading statements and/or omitted to disclose material facts; and

(c) The extent and appropriate measure of damages.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually seek redress for the wrongs done to them. Plaintiff knows of no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against the Trust, Managed Portfolio Series, Easterly Securities, Quasar,
### and the Trustee Defendants

62.     Plaintiff incorporates all allegations in ¶¶1-61 above by reference.

63.     This Count is brought pursuant to §11 of the 1933 Act on behalf of plaintiff and the Class against the Trust, Managed Portfolio Series, Easterly Securities, Quasar, and the Trustee Defendants.

64.     The Offering Materials, which consist of the registration statements for the Fund and documents incorporated therein, were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

65.     The Trust has been the registrant for the shares of the Fund since the October 2024 reorganization, with Managed Portfolio Series serving as the registrant prior to that time.  As such, both defendants are strictly liable for the materially false and misleading statements in the Offering Materials.  Easterly Securities and Quasar, as the Fund's underwriters, and the Trustee Defendants, who signed the registration statements and/or were members of the relevant Boards of Trustees, were responsible for the contents and dissemination of the Offering Materials.

66.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading.

67.     By reasons of the conduct alleged, each of the defendants named herein violated, and/or controlled a person who violated, §11 of the 1933 Act.

68.     Plaintiff acquired shares of the Fund during the Class Period and pursuant to the Offering Materials, including the defective registration statements for the Fund as detailed herein.

At the time plaintiff purchased shares of the Fund, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.

69.     Plaintiff and the Class have sustained damages.  The value of the shares of the Fund has declined substantially subsequent to and due to defendants' violations.

## COUNT II

### For Violation of §12(a)(2) of the 1933 Act
### Against All Defendants

70.     Plaintiff incorporates all allegations in ¶¶1-69 above by reference.

71.     This Count is brought pursuant to §12(a)(2) of the 1933 Act on behalf of plaintiff and the Class against all defendants.

72.     Defendants were sellers and offerors and/or solicitors of purchasers of the shares of the Fund offered pursuant to the Offering Materials, which constituted the prospectuses for the Fund, and were motivated by a desire to serve their own financial interests or those of the Fund, Easterly, and/or PSP.

73.     The Offering Materials contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.  The Investment Adviser Defendants, the Trustee Defendants, Easterly Securities, and Quasar each solicited investors for the Fund, including by participating in the preparation and dissemination of the false and misleading Offering Materials, and participating in marketing the shares of the Fund to investors.

74.     Defendants owed to the purchasers of Fund shares, including plaintiff and other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials and corresponding supplements and amendments to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to

make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Offering Materials as set forth above.

75.    Plaintiff and other members of the Class purchased shares of the Fund pursuant to the Offering Materials, including the defective prospectuses for the Fund as detailed herein.  Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Offering Materials for the Fund.

76.    By reason of the conduct alleged herein, defendants violated, and/or controlled a person who violated, §12(a)(2) of the 1933 Act.  Accordingly, plaintiff and members of the Class who hold shares of the Fund have the right to rescind and recover the consideration paid for their shares of the Fund and hereby elect to rescind and tender those shares to the defendants sued herein.  Plaintiff and Class members who have sold their shares of the Fund are entitled to rescissory damages.

## COUNT III

### For Violation of §15 of the 1933 Act
### Against the Investment Adviser Defendants and the Trustee Defendants

77.    Plaintiff incorporates all allegations in ¶¶1-76 above by reference.

78.    This Count is brought pursuant to §15 of the 1933 Act on behalf of plaintiff and the Class against the Investment Adviser Defendants and the Trustee Defendants.

79.    The Investment Adviser Defendants managed and controlled the business affairs of the Fund, the Trust, and/or the Managed Portfolio Series and was a control person of the Fund, the Trust, and/or the Managed Portfolio Series as detailed herein.  The Investment Adviser Defendants and their directors and/or officers each had a series of direct and/or indirect business and/or personal

relationships with the trustees, directors and/or officers and/or major shareholders of the Fund, the Trust, and/or the Managed Portfolio Series.

80.    Each of the Trustee Defendants was a control person of the Fund, the Trust, and/or the Managed Portfolio Series by virtue of his or her position as a director, trustee, and/or senior officer of the Fund, the Trust, the Managed Portfolio Series, or the Investment Adviser Defendants. The Trustee Defendants each had a series of direct and/or indirect business and/or personal relationships with other trustees, directors and/or officers, and/or major shareholders of the Fund, the Trust, and/or the Managed Portfolio Series.

81.    Each of the defendants named herein was a culpable participant in the violations of §§11 and 12(a)(2) of the 1933 Act alleged in Counts I and II above, based on their having signed the registration statements for the Fund during the Class Period, preparing and disseminating the Offering Materials, soliciting investment in the Fund, and/or having otherwise participated in the process which allowed the sale of the shares of the Fund to be successfully completed.  By reason of such conduct, the defendants named in this Count are liable pursuant to §15 of the 1933 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding recission and/or a rescissory measure of damages;

D. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 22, 2025
                                    ROBBINS GELLER RUDMAN
                                          &DOWD LLP
                                    SAMUEL H. RUDMAN

                                              s/ Samuel H. Rudman
                                        SAMUEL H. RUDMAN

                                    58 South Service Road, Suite 200
                                    Melville, NY 11747
                                    Telephone: 631/367-7100
                                    631/367-1173 (fax)
                                    srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
bcochran@rgrdlaw.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

Troyt M. Victorson ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___21___ day of July, 2025.



Troyt M. Victorson

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Institutional Class Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 08/01/2023 | 3,405.995 | $7.34 |
| 08/31/2023 | 0.295 | $7.40 |
| 08/31/2023 | 16.162 | $7.34 |
| 08/31/2023 | 16.405 | $7.34 |
| 09/29/2023 | 0.001 | $7.01 |
| 09/29/2023 | 0.337 | $7.35 |
| 09/29/2023 | 2.975 | $7.14 |
| 09/29/2023 | 14.875 | $7.14 |
| 09/29/2023 | 18.119 | $7.14 |
| 10/02/2023 | 2,142.857 | $7.00 |
| 10/31/2023 | 0.001 | $6.39 |
| 10/31/2023 | 0.001 | $6.89 |
| 10/31/2023 | 10.422 | $6.89 |
| 10/31/2023 | 10.615 | $6.89 |
| 10/31/2023 | 18.591 | $6.89 |
| 10/31/2023 | 18.869 | $6.89 |
| 11/30/2023 | 0.001 | $7.21 |
| 11/30/2023 | 0.001 | $7.21 |
| 11/30/2023 | 1.842 | $7.21 |
| 11/30/2023 | 11.290 | $7.21 |
| 11/30/2023 | 18.136 | $7.21 |
| 11/30/2023 | 27.111 | $7.21 |
| 11/30/2023 | 2,753.141 | $7.21 |
| 12/29/2023 | 0.001 | $7.34 |
| 12/29/2023 | 0.001 | $7.34 |
| 12/29/2023 | 11.144 | $7.34 |
| 12/29/2023 | 12.804 | $7.34 |
| 12/29/2023 | 17.903 | $7.34 |
| 12/29/2023 | 28.580 | $7.34 |
| 01/31/2024 | 0.001 | $7.37 |
| 01/31/2024 | 0.001 | $7.37 |
| 01/31/2024 | 1.388 | $7.37 |
| 01/31/2024 | 40.985 | $7.37 |
| 02/29/2024 | 42.234 | $7.43 |
| 03/28/2024 | 42.513 | $7.42 |
| 04/30/2024 | 43.163 | $7.34 |
| 05/31/2024 | 43.527 | $7.32 |
| 06/28/2024 | 43.318 | $7.37 |
| 07/31/2024 | 43.610 | $7.38 |

| Date Disposed | Amount of Shares Disposed | Price |
|---|---|---|
| 08/31/2023 | 16.162 | $7.34 |
| 09/29/2023 | 17.852 | $7.14 |
| 10/31/2023 | 10.422 | $6.89 |

| | | |
|---|---|---|
| 10/31/2023 | 18.591 | $6.89 |
| 11/30/2023 | 11.085 | $7.21 |
| 11/30/2023 | 17.868 | $7.21 |
| 12/29/2023 | 10.941 | $7.34 |
| 12/29/2023 | 17.639 | $7.34 |
| 07/16/2025 | 8,738.655 | $2.94 |

Prices listed are rounded up to two decimal places.