**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTERLY ROCMUNI HIGH INCOME MUNICIPAL BOND FUND | 25-cv-6028 (DLC) |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Frederic S. Fox
Donald R. Hall
Jeffrey P. Campisi
Brandon Fox
Clara Abramson
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
F: (212) 687-7714
jcampisi@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com
bfox@kaplanfox.com
cabramson@kaplanfox.com

*Lead Counsel for Lead Plaintiff Richard Fulford and the Proposed Class*

Dated: April 23, 2026

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... iii

I.     PRELIMINARY STATEMENT ................................................................................... 1

II.    BACKGROUND ON THE FUND .............................................................................. 4

III.   ARGUMENT ............................................................................................................... 5

       A.     Legal Standard ................................................................................................. 5

       B.     The Fund's Registration Statements and Prospectuses Contained Material
              Misstatements and Omissions ......................................................................... 6

              1.     Materially False Statements and Omissions About the Funds'
                     Liquidity ................................................................................................ 6

                     a.     The Complaint Alleges Defendants' Representations Were
                            Materially False and Misleading at the Time They Were
                            Made ............................................................................................ 9

                     b.     The Fund's Liquidity Representations Contradicted
                            Existing Facts and Are Actionable ............................................ 11

                     c.     Defendants' "Hindsight" Argument Improperly Ignores
                            Specific Contemporaneous Facts Showing Illiquidity ............. 12

                     d.     The Fund's Liquidity Risk Representations Were
                            Materially False and Misleading ............................................... 13

              2.     Materially False Statements and Omissions About the Funds'
                     Valuation of its Assets ........................................................................ 14

                     a.     The Fund Misrepresented That Market Data Was Used to
                            Value the Fund's Assets ............................................................ 16

                     b.     The Complaint Alleges Objective Facts That Contradicted
                            the Fund's Representations ........................................................ 17

                     c.     The Next Renewable Fuels Allegations Are Based on
                            Objective Facts .......................................................................... 18

                     d.     The 2022 Registration Statements Failed to Disclose
                            Valuation Risk as a Principal Risk ........................................... 19

i

3.      Materially False Statements and Omissions About the Funds' Investment in Defaulted Securities ............................................................. 19

4.      Materially False Statements and Omissions About the Funds' Sector Risk ....................................................................................... 22

C.      The Complaint's Securities Act Claims Are Timely ........................................... 24

D.      The Complaint Adequately Alleges a Proxy Disclosure Claim ........................... 29

1.      The Proxy Was An Essential Link ............................................................. 29

2.      The Complaint Adequately Alleges Loss Causation ................................ 30

3.      The Complaint Adequately Alleges Defendants' Negligence .................. 31

4.      Investors are Entitled to Seek Actual Damages ....................................... 32

E.      The Complaint Adequately Alleges Control Person Claims ............................... 32

IV.     CONCLUSION .............................................................................................................. 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)........................................................................................ 18

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010).......................................................................... 33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 6

*Banco Safra S.A.-Cayman Islands Branch v. Andrade Gutierrez Int'l S.A.*,
2018 WL 1276847 (S.D.N.Y. Mar. 8, 2018) ............................................................... 14

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)...................................................................................................... 16

*Beck v. Dobrowski*,
559 F.3d 680 (7th Cir. 2009) ................................................................................... 31, 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ 6

*Bettis v. Aixtron SE*,
2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016) ............................................................. 24

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ............................................................... 24

*Bond Opportunity Fund v. Unilab Corp.*,
2003 WL 21058251 (S.D.N.Y. May 9, 2003) ............................................................. 32

*Bouchard-A v. N. Genesis Acquisition Corp.*,
2025 WL 1808469 (S.D.N.Y. July 1, 2025) ............................................................... 32

*Bricklayers and Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012).................................................................... 30, 31

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020).......................................................................... 33

*City of Roseville Emp. Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011).......................................................................... 23

*Dekalb County Pension Fund v. Transocean Ltd.*,
  817 F.3d 393 (2d Cir. 2016)..............................................................................32

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  847 F. Supp. 2d 624 (S.D.N.Y. 2012)..................................................................20

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
  2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021)..............................................6, 29, 30

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011)..............................................................................17

*Fresno Cnty. Emp. Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017)................................................................6, 31

*Garnett v. RLX Tech. Inc.*,
  632 F. Supp. 3d 574 (S.D.N.Y. 2022)..................................................................24

*Genesee Cnty. Emp. Ret. Sys. v. DocGo Inc.*,
  773 F. Supp. 3d 62 (S.D.N.Y. 2025).....................................................................9

*Gerstle v. Gamble-Skogmo, Inc.*,
  478 F.2d 1281 (7th Cir. 1973) ...........................................................................32

*Goldschein v. Avangrid*,
  2025 WL 3707500 (S.D.N.Y. Dec. 22, 2025) .......................................................24

*Gould v. American-Hawaiian S.S. Co.*,
  535 F.2d 761 (3d Cir. 1976)..............................................................................32

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018)..................................................................24

*Hawes v. Argo Blockchain plc*,
  2024 WL 4451967 (S.D.N.Y. Oct. 9, 2024)...........................................................12

*Herman & McLean v. Huddleston*,
  459 U.S. 375 (1983).........................................................................................5

*Hunt v. All. N. Am. Gov't Income Tr., Inc.*,
  159 F.3d 723 (2d Cir. 1998).........................................................................14, 16

*In re Adient plc Sec. Litig.*,
  2020 WL 1644018 (S.D.N.Y. April 2, 2020) .........................................................12

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 402 (S.D.N.Y. 2005)..................................................................28

iv

*In re Bank of America Corp. Sec., Derivative, and Emp. Ret.*
   *Income Sec. Act (ERISA) Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010)........................................................ 24, 29, 30, 31

*In re Bemis Co. Sec. Litig.*,
   512 F. Supp. 3d 518 (S.D.N.Y. 2021)........................................................ 32

*In re Lottery.com, Inc. Sec. Litig.*,
   765 F. Supp. 3d 303 (S.D.N.Y. 2025)........................................................ 31

*In re Micro Focus Int'l Plc Sec. Litig.*,
   2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020)............................................ 20

*In re Moody's Corp. Sec. Litig.*,
   599 F. Supp. 2d 493 (S.D.N.Y. 2009)........................................................ 26, 28

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010)............................................. 28

*In re Norfolk Southern Corp. Bond/Note Sec. Litig.*,
   2025 WL 641089 (S.D.N.Y. Feb. 27, 2025)................................................ 24

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   838 F. Supp. 2d 1148 (D. Colo. 2012)....................................................... 8, 11, 16

*In re Proshares Trust II Sec. Litig.*,
   2020 WL 71007 (S.D.N.Y. Jan. 3, 2020) ................................................... 14

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   930 F. Supp. 68 (S.D.N.Y. 1996) .............................................................. 20

*In re Scottish Re Grp. Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007)........................................................ 33

*In re Shanda Games Ltd. Sec. Litig.*,
   128 F.4th 26 (2d Cir. 2025) ....................................................................... 30

*In re Willis Towers Watson Plc Proxy Litig.*,
   439 F. Supp. 3d 704 (E.D. VA 2020) ........................................................ 31

*In re WorldCom, Inc. Sec. Litig.*,
   346 F. Supp. 2d 628 (S.D.N.Y. 2004)........................................................ 5, 21

*IWA Forest Indus. Pension Plan v. Textron Inc.*,
   14 F.4th 141 (2d Cir. 2021) ....................................................................... 13

*Jiajia Luo v. Sogou, Inc.*,
   465 F. Supp. 3d 393 (S.D.N.Y. 2020)........................................................ 16

v

*Koppel v. 4987 Corp.*,
167 F.3d 125 (2d. Cir. 1999)................................................................................. 30

*Krouner v. Am. Heritage Fund, Inc.*,
1996 WL 393584 (S.D.N.Y. July 15, 1996) ............................................................ 8

*Lian v. Tuya Inc.*,
2024 WL 966263 (S.D.N.Y. Mar. 5, 2024) ........................................................... 14

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2005)............................................................................................. 22

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
902 F. Supp. 2d 329 (S.D.N.Y. 2012).................................................................. 28

*Martinek v. AmTrust Fin. Services, Inc.*,
2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020)........................................................ 9

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010)....................................................................................... 25, 26

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)...................................................................... 14, 16, 17

*Meyer v. Seidel*,
89 F.4th 117 (2d Cir. 2023) ......................................................................... 25, 26, 27

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)....................................................................................... 29, 30

*Milman v. Box Hill Sys. Corp.*,
72 F. Supp. 2d 220 (S.D.N.Y. 1999)..................................................................... 28

*N.Y. City Pub. Pension Funds v. Coupang, Inc.*,
2025 WL 2613650 (S.D.N.Y. Sept. 10, 2025)................................................... 20, 27

*NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*,
2013 WL 620257 (S.D.N.Y. Feb. 15, 2013)........................................................... 27

*New Jersey Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010)........................................................ 10

*New Jersey Carpenters Health Fund v. Residential Cap., LLC*,
2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010)........................................................ 24

*Newman v. Warnaco Grp., Inc.*,
335 F.3d 187 (2d Cir. 2003).................................................................................. 28

vi

*Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017).................................................................................. 5, 26

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)..................................................................................... 13

*Ohio Pub. Emps. Ret. Sys. v. Discovery, Inc.*,
715 F. Supp. 3d 483 (S.D.N.Y. 2024)...................................................................... 11

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................ 11, 12

*Ong v. Chipotle Mexican Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018)...................................................................... 16

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
799 F. Supp. 3d 310 (S.D.N.Y. 2025)...................................................................... 26

*Pappas v. Qutoutiao Inc.*,
2024 WL 4588491 (2d Cir. Oct. 28, 2024).............................................................. 18

*Ray v. StoneCo Ltd.*,
2024 WL 4308130 (S.D.N.Y. Sept. 25, 2024).......................................................... 14

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*,
333 F. Supp. 3d 338 (S.D.N.Y. 2018)...................................................................... 20

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..................................................................................... 14

*Set Cap. LLC v. Credit Suisse Grp. AG*,
996 F.3d 64 (2d Cir. 2021)....................................................................................... 10

*Sherman v. Abengoa, S.A.*,
156 F.4th 152 (2d Cir. 2025) ................................................................................... 25

*Silberstein v. Aetna, Inc.*,
2014 WL 1388790 (S.D.N.Y. Apr. 9, 2014)............................................................. 32

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019)....................................................................................... 16

*SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*,
2010 WL 2473595 (S.D.N.Y. June 17, 2010) ......................................................... 24

*Staehr v. Hartford Fin. Servs. Grp.*,
547 F.3d 406 (2d Cir. 2008)..................................................................................... 27

*Thomas v. Citigroup Glob. Mkt. Holdings Inc.*,
  2022 WL 1051158 (S.D.N.Y. Mar. 1, 2022) ........................................................ 11

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
  985 F.2d 1190 (2d Cir. 1993).............................................................................. 24

*Virginia Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991)........................................................................................... 30

*Wang v. Cloopen Grp. Holding Ltd.*,
  661 F. Supp. 3d 208 (S.D.N.Y. 2023).................................................................. 22

*Yaroni v. Pintec Tech. Holdings Ltd.*,
  600 F. Supp. 3d 385 (S.D.N.Y. 2022) .................................................................. 14

*Youngers v. Virtus Invs. Partners, Inc.*,
  195 F. Supp. 3d 499 (S.D.N.Y. 2016)................................................................... 27

**Statutes**

15 U.S.C. § 77m.......................................................................................................... 24

15 U.S.C. § 77z............................................................................................................ 21

15 U.S.C. § 78bb.......................................................................................................... 32

15 U.S.C. § 78u-5 .................................................................................................. 21, 32

**Rules**

Fed. R. Civ. P. 8.................................................................................................. 4, 6, 30

Fed. R. Civ. P. 12............................................................................................................ 6

**Adminstrative Materials**

*Inv. Co. Liquidity Risk Mgmt. Programs*,
  2016 WL 6023911 (Oct. 13, 2016)....................................................................... 12

Lead Plaintiff Richard Fulford[1] ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 111) (the "Motion").[2]

## I.    __PRELIMINARY STATEMENT__

Plaintiff's claims arise from the stunning collapse of the Easterly ROCMuni High Income Municipal Bond Fund (the "Fund"), a purportedly diversified, open-end mutual fund marketed to retail investors.[3] On June 13, 2025, the Fund's net asset value ("NAV") crashed by over 30% and then continued to decline, causing massive losses for investors and ultimately causing the Fund to liquidate. The value of over $58 million in securities vanished when the Fund sold them all for approximately $10 million, a decline in value of over 82%. The magnitude of this sharp and sudden decline illustrates that these bonds were illiquid, and the Fund's assets and NAV were materially overvalued.

Contemporaneous press coverage of the Fund's collapse described how the Fund sold illiquid bonds for a fraction of the Fund's represented valuation. The Fund later admitted that the dramatic decline in NAV was caused by "liquidity-driven dispersion." Indeed, at the time of the Fund's collapse, at least 45% of the Fund's assets were illiquid, a level that vastly exceeded the Fund's represented 15% cap on illiquid assets.

---

[1] Defendants mistakenly state that Plaintiff's name is "Richard Fulton." ECF No. 112, at 5.

[2] Citations to "¶_" refer to paragraphs of the Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 98) (the "Complaint"). Citations to "Defs. Br. at _" refers to pages of the Memorandum of Law in Support of Defendants' Motion. ECF No. 112. The "Class Period" is July 29, 2022 through June 12, 2025. ¶1. "Defendants" has the same meaning as alleged in paragraph 2 of the Complaint.

[3] The Complaint alleges strict liability and negligence claims under sections 11, 12 and 15 the Securities Act of 1933 ("Securities Act") and sections 14(a) and 20(a) under the Exchange Act of 1934 ("Exchange Act").

Until the Fund collapsed, Defendants' material misstatements and omissions concealed Defendants' securities laws violations from investors. The Complaint plausibly alleges that during the Class Period, Defendants offered and sold shares of the Fund through registration statements and prospectuses that represented that (i) the Fund "will not hold more than 15%" of its assets in illiquid investments, which was not true because throughout the Class Period more than 15% of the Fund's assets were illiquid, (ii) that the Fund used "market-based" and investment specific information to value the Fund's assets, which was not true because the Fund's pricing service and the Fund's board of trustees ignored contemporaneous market transactions and security specific information that showed the Fund's valuations were materially overstated, (iii) the Fund's investment in defaulted securities was not a "significant investment strategy," when, in fact, it was a principal investment strategy, as defined by the U.S. Securities and Exchange Commission ("SEC"), and the Fund omitted to disclose a material amount of defaulted securities in the Fund's 2024 financial statements, and (iv) the Fund's concentration in a market sector was a hypothetical risk when, in reality, the risk had already materialized.

Like all investors do, Plaintiff and investors took risks in investing in the Fund. However, they did not bargain for Defendants violating their disclosure obligations and failing to disclose the material negative facts and risks that had materialized during the Class Period which left them holding the bag when the Fund collapsed. While Defendants mischaracterize the Complaint as seeking "broad insurance" against market losses and claims of mismanagement, in fact, it seeks to hold Defendants accountable for their violations of the federal securities laws.

At this stage, the Complaint need only provide notice and plead plausible claims, not prove them. However, Defendants' arguments mischaracterize and dispute facts, dispute materiality, raise questions of fact, and heavily rely on documents extraneous to the Complaint, none of which

2

is proper on a motion to dismiss.[4]

For example, Defendants heavily rely on a Morningstar editorial extraneous to the Complaint to assert that the claims under the Securities Act are time barred and to dispute the Complaint's allegations. As explained in the Motion to Strike, Defendants have failed to establish that judicial notice is warranted. Even assuming, *arguendo*, the Court considers it in resolving the motion to dismiss, Defendants mischaracterize the editorial's content—it does not disclose the undisclosed material facts alleged in the Complaint and it did not put Fund investors on notice of the probability of claims under the Securities Act. The Morningstar editorial does not accuse any Defendant of wrongdoing and it repeats the same risk disclosures set forth in the Fund's registration statements and prospectuses that the Complaint alleges were materially false and misleading at that time. Defendants' tendentious reading of the Morningstar editorial and arguments based upon it are insufficient to prove Defendants' affirmative defense.

Moreover, Defendants argue that none of the alleged misrepresentations or omissions were material because certain information about some of the issuers of bonds held by the Fund was "publicly available," a question that is inherently fact intensive. In Defendants' telling, mutual fund investors are required to investigate each portfolio holding of a fund and are charged with the knowledge and skill possessed by bond market experts. Defendants' arguments conspicuously ignore the allegations that show, contrary to Defendants' arguments, that information about the performance of a material number of illiquid and overvalued bonds held by the Fund was concealed in confidential "data rooms," was inaccessible to investors and was not publicly

---

[4] In the accompanying Motion to Strike and Opposition to Defendants' Request for Judicial Notice ("Motion to Strike"), Plaintiff moves to strike the extraneous documents, or in the alternative, if the Court considers them in resolving the Motion, to convert the Motion to a motion for summary judgement, which should be denied so that Plaintiff may conduct discovery.

3

available. More important, Defendants' arguments that certain, purportedly "public," information precludes Plaintiff's claim should be rejected. Investors are entitled to rely on the information provided in a prospectus. Under the Securities Act, the duty to disclose rests on Defendants. Indeed, the Fund prominently advised investors on page one of the summary prospectuses to read the Fund's prospectus before investing.[5] To require more would represent a stark departure from the investor protections and mandatory disclosure requirements under the Securities Act and a return to caveat emptor in the public securities markets.

Finally, Defendants attempt to recast the Fund's valuation and liquidity representations as subjective opinions or judgments, and "hindsight" allegations. However, the Fund made present tense representations of fact that conflicted with the undisclosed truth. The Complaint alleges facts, such as contemporaneous market transactions and economic information, from which the Court can reasonably infer that the statements were materially false at the time they were made.

Defendants do not dispute that the notice pleading standard of Rule 8 applies and that the Court must consider the allegations in the light most favorable to Plaintiff. Under this standard, the Complaint plausibly alleges violations of the Securities Act and the Exchange Act. Accordingly, Defendants' Motion should be denied in its entirety.

## II.    <u>BACKGROUND ON THE FUND</u>

The Fund is an open-end mutual fund that sought to provide "long-term, yield-driven total return relying mostly on fundamental credit analysis by building a diversified high-yield portfolio focusing on overlooked and under-appreciated sectors of the high-yield municipal bond market." ¶¶5, 26-27, 44. Throughout the Class Period, the Fund's primary investment objective was to provide current income exempt from regular federal income tax and at least 80% of its net assets

---

[5] *See, e.g.*, Decl. of David M.J. Rein in Supp. of Defs. Mot. to Dismiss the Am. Compl., Exhibit 7 (ECF No. 113-7, Page 2 of 8).

4

were invested in tax exempt debt securities. ¶4.

Before the Class Period through October 2024, the Fund was marketed as the Principal Street High Income Municipal Fund. ¶¶26, 51. Defendant Managed Portfolio Series Trust (the "MPS Trust") issued shares of the Fund. ¶26. The Fund's investment advisor was Defendant Principal Street Partners, LLC ("PSP") and the MPS Trust's executives and trustees were Benjamin J. Eirich, Treasurer, Brian R. Wiedmeyer, President, and Robert J. Kern, David A. Massart, David M. Swanson, and Leonard M. Rush. ¶¶28, 32-37. Defendant Quasar Distributors, LLC was the underwriter of the Fund's shares. ¶42.

In October 2024, Defendant PSP and Defendant Easterly Investment Partners LLC ("EIP") entered into a Reorganization that created a new series of shares of Defendant James Alpha Funds Trust (the "Easterly Trust"), the Easterly ROCMuni High Income Municipal Bond Fund. ¶48. After the Reorganization, EIP was the Fund's investment advisor and the Easterly Trust's executives and trustees were Darrell Crate ("Crate"), President and Chairperson, Michael J. Montague, the Treasurer and principal financial officer, Neil Medugno and A. Clayton Spencer. ¶¶29, 38-41. Easterly Securities LLC was the underwriter of the Fund's shares. ¶43.

Defendants Troy Willis and Charlie Pulire were the Fund's portfolio managers (the "Portfolio Manager Defendants") throughout the Class Period. ¶46.

## III.    ARGUMENT

### A.    Legal Standard

Claims brought under sections 11 and 12 of the Securities Act are strict liability and negligence claims. *See Herman & McLean v. Huddleston*, 459 U.S. 375, 382 (1983); *FHFA v. Nomura Holding Am., Inc.*, 873 F.3d 85, 99 (2d Cir. 2017) (stating Section 12 imposes strict liability on issuers). There is no requirement to plead scienter, reliance or loss causation. *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 659, 672 (S.D.N.Y. 2004).

To state a claim under section 14(a) of the Exchange Act and Rule 14a-9, a complaint must allege that: (1) a proxy statement contained a material misstatement or omission, which (2) caused plaintiff injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *9 (S.D.N.Y. Sept. 27, 2021). A section 14 claim only requires an allegation of negligence. *Fresno Cnty. Emp. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 560 (S.D.N.Y. 2017).

The notice pleading standard under Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and does not require detailed factual allegations. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. As set forth below, the Complaint plausibly alleges violations of the Securities Act and Exchange Act.

## B.    The Fund's Registration Statements and Prospectuses Contained Material Misstatements and Omissions

During the Class Period, the Fund continuously offered shares through seven registration statements and prospectuses that contained materially false and misleading statements, and omitted to disclose material facts. ¶17.

### 1.    Materially False Statements and Omissions About the Funds' Liquidity

The Fund represented it "will not hold more than 15%" and "will not invest more than 15%

of the value of its net assets in securities that are illiquid." ¶¶167-68. Yet, as the Complaint alleges, throughout the Class Period, the Fund's illiquid holdings exceeded the represented cap and reached as high as 45%. ¶¶93-101, 173.

Far from hindsight allegations as Defendants assert, the Complaint details how the Fund exceeded its represented limit on illiquid assets, citing market data and economic factors that show the assets were illiquid when the statements were made. ¶¶93-101. The Fund defined an illiquid investment as any investment that the Fund "reasonably expects cannot be sold or disposed of in current market conditions in seven calendar days or less without the sale or disposition significantly changing the market value of the investment." ¶75. The Complaint identifies bonds that consistently represented over 15% of the Fund's assets and that possessed the economic attributes of assets for which there is no active market. ¶¶81-87 (economic factors); ¶¶94-95. Because a security is illiquid if it cannot be sold in the ordinary course of business within seven days without harming value, whether there is an active market for that security is critical. ¶87.

These allegations are corroborated by empirical evidence that shows these assets were illiquid under the Fund's definition of an illiquid asset. During the Class Period, relevant market and trading data, and bond specific information show that these bonds were substantially overvalued, and as a result, the Fund could not dispose of these bonds without significantly changing the market value. ¶¶109-36. For example, on April 2, 2025, contemporaneous market transactions in a bond held by the Fund showed the market value of the bond was approximately 8.7 cents on the dollar, while the Fund valued the same bond at 70 cents (with a value of over $6.2 million), representing a valuation over 704% higher than the market. ¶¶120-23. By at least that time, this bond was illiquid because the Fund could not sell it without damaging its value. Indeed, just weeks later, the Fund sold the bond at 3 cents on the dollar, a fact confirming the bond's

illiquidity. ¶124.

The Complaint alleges numerous examples where contemporaneous market values dramatically diverged from the Fund's valuations at the time, allegations that plausibly show illiquidity because those assets could not be sold without harming value. ¶¶108-35. And the massive decline in the NAV at the end of the Class Period—when the Fund sold over $58 million in assets at an 82% discount—confirms that these assets were illiquid during the Class Period. ¶98.

In addition, Defendants ignore that the Complaint alleges that the Fund's representation that liquidity is determined based on "relevant market, trading and investment specific consideration" was materially false and misleading because the Fund was not considering contemporaneous market data that showed that the market valued the bonds at massive discounts to the Fund's represented value, demonstrating that the Fund could not sell these assets without harming value, i.e. they were illiquid. ¶181.

Contrary to Defendants' arguments, material misstatements regarding the extent of a fund's investment in illiquid securities are actionable under the securities laws. *See, e.g.*, *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1171 (D. Colo. 2012) (sustaining claim because "Each Prospectus defined 'illiquidity' in concrete terms" and that liquidity would be "maintained at less than 15%."); *Krouner v. Am. Heritage Fund, Inc.*, 1996 WL 393584, at *3 (S.D.N.Y. July 15, 1996) ("[T]here is a substantial likelihood that a reasonable investor in the Fund would find the Fund's excessive investment in illiquid securities to be a material fact, notwithstanding the knowledge that the Fund regularly invests in that type of security.").

Defendants' arguments that none of the Fund's representations concerning liquidity are actionable are meritless because they ignore key allegations, mischaracterize the Complaint, and

improperly dispute materiality.[6]

### a. The Complaint Alleges Defendants' Representations Were Materially False and Misleading at the Time They Were Made

Defendants' arguments that the Fund did not promise it would never exceed the 15% cap or that there is no allegation that any asset was illiquid "at acquisition," Defs. Br. at 13-14, miss the point. During the Class Period, the registration statements and prospectuses made present tense, unequivocal representations. ¶¶74, 168, 172. And yet, during the Class Period, the Fund did not disclose that more than 15% of the Fund's assets were illiquid. Contrary to Defendants assertions, no reasonable investor would read the disclosures to represent only that the 15% cap could be exceeded if a bond became illiquid after acquisition. Even assuming, *arguendo*, the bonds were liquid whenever the Fund acquired them, during the Class Period, the Complaint alleges that more than 15% of the Fund's assets were illiquid, which conflicted with its disclosures.

Use of the word "will" misleadingly conveyed certainty to investors that the Fund had determined that the Fund's assets did not exceed the 15% cap at the time the statement was made. *See Martinek v. AmTrust Fin. Services, Inc.*, 2020 WL 4735189, at *12, 14 (S.D.N.Y. Aug. 14, 2020) (finding representation company "will continue" to list on exchange was misleading where company later delisted weeks after representation because representation conveyed certainty); *Genesee Cnty. Emp. Ret. Sys. v. DocGo Inc.*, 773 F. Supp. 3d 62, 84 (S.D.N.Y. 2025) (noting that "present intentions as to future operations" not insulated by the bespeaks-caution doctrine). The fact that the Fund's collapse was caused by excessive holdings of illiquid assets confirms that these

---

[6] Defendants' arguments that the Fund's disclosures are not misleading because they "tracked the [SEC] Rule," and that Plaintiff is attempting to assert a private right of action for violation of SEC Rule 22e-4, Defs. Br. at 2, 12-15, mischaracterize the allegations in the Complaint. The claims alleged in the Complaint are brought under the investor protection provisions of the Securities Act and Exchange Act, not the SEC Rule. ¶¶167-81.

representations were not true when made.

Defendants further argue that they "made no promise about future events," and assert that no reasonable investor could understand that the 15% threshold would never be exceeded. Defs. Br. at 14-15. Defendants' arguments are unpersuasive because the Fund's representations concern present conditions. No reasonable investor could understand the Fund's representations to leave open the possibility that the Fund had already exceeded and would continue to exceed its represented 15% cap on illiquid assets. "Courts find a violation of Section 11 when 'material facts have been omitted or presented in such a way as to obscure or distort their significance' . . . The test for determining whether the prospectus contained a material misstatement or omission is whether the defendants' representations in the prospectus, taken together and in context, would have misled a reasonable investor.'" *New Jersey Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2010 WL 1473288, at *6 (S.D.N.Y. Mar. 29, 2010). Defendants are not insulated from liability where the risk had already materialized, particularly where this would be of significance to investors, and the misstatements altered the total mix of information available to investors. *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85-86 (2d Cir. 2021) (citation omitted).

Even if an asset was not illiquid "at acquisition" or if the Fund were to exceed the 15% threshold in the future, Defendants falsely represented that the Fund would "remediate the excess illiquid investments" and "protect liquidity." ¶¶171-72. A reasonable investor would understand the Fund's representations to mean that the Fund did not exceed the 15% threshold at that time (not true), and if it ever were to, it would protect liquidity and remediate. ¶¶147-48. Far from remediating the Fund's exposure to illiquid assets, the Fund's exposure to illiquid assets "consistently represented a significant percentage of the Fund's net assets" and grew to over 45% of the Fund's assets, causing the Fund to collapse. ¶¶93-101.

10

**b.      The Fund's Liquidity Representations Contradicted Existing Facts and Are Actionable**

Because the Fund's statements concerning illiquidity were objective and the Fund represented its 15% limit in concrete terms, these statements did not express judgment or subjectivity. *Oppenheimer*, 838 F. Supp. 2d at 1171 (rejecting argument that liquidity representations involved exercise of judgment, because "Defendants did not do what they said they would do in their Fund Prospectuses."). As outlined above, the Complaint alleges ascertainable data points that existed at the time the Fund made its misleading liquidity representations. ¶¶75, 81, 87, 93, 101, 108-35.[7] Focusing on whether the statements themselves convey facts and the certainty they express, the Fund's representations that it will not exceed a 15% cap on illiquid assets was not an opinion. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (stating "[a] fact is 'a thing done or existing' or '[a]n actual happening.'").

Defendants' criticism of the economic attributes that reflect illiquidity and that the Fund's Level 3 assets were illiquid, Defs. Br. at 16-18 n.11, disputes facts and cannot be credited at the pleading stage. *Oppenheimer*, 838 F. Supp. 2d at 1163 n.7. ("Defendants response challenging Plaintiffs definition of 'illiquidity' and calculation methodology is not germane on a Motion to Dismiss"). These are facts from which the Court can reasonably infer that the statements were

---

[7] These facts demonstrate that the allegedly omitted facts both existed, and were knowable, at the time of the offering, and therefore, are not "hindsight" allegations, as was the case in *Ohio Pub. Emps. Ret. Sys. v. Discovery, Inc.*, 715 F. Supp. 3d 483, 495 (S.D.N.Y. 2024). And, unlike in *Discovery*, where changes to a business plan were publicized, investors did not become aware that the Fund had exceeded its represented limit on illiquid assets until after the Class Period. The court's decision in *Thomas v. Citigroup Glob. Mkt. Holdings Inc.*, 2022 WL 1051158, at *15 (S.D.N.Y. Mar. 1, 2022) is inapposite because plaintiffs conceded that the statements "became untrue" after the disclosures.

false at the time they were made.[8] The only economic factor expressly disputed—that bonds held by mutual funds are less liquid—is, in fact, supported by economic analysis. *See* Mutual Fund Fragility, Dealer Liquidity Provisions, and the Pricing of Municipal Bonds (February 15, 2022), http://dx.doi.org/10.2139/ssrn.3728943 (last visited April 15, 2026).

Defendants cherry pick from SEC guidance to assert that the SEC "made clear" that liquidity is an opinion. However, SEC guidance emphasizes that liquidity determinations should reflect "current market conditions," "trading, and investment-specific considerations," and "market depth." *Inv. Co. Liquidity Risk Mgmt. Programs*, 2016 WL 6023911, at *49, 105 (Oct. 13, 2016). The Fund's repeated representation that it will not invest more than 15% of its assets in illiquid assets did not align with the information in the Fund's possession at the time the statements were made. ¶¶75, 81, 87, 93, 101, 108-35.[9] The "core inquiry" is whether the omitted facts would "conflict with what a reasonable investor would take from the statement itself." *Omnicare*, 575 U.S. at 189 (stating registration statements are formal documents filed with SEC and "Investors do not, and are right not to, expect opinions contained in those statements to reflect baseless, off-the-cuff judgments."). Thus, even assuming, *arguendo*, the Court considers the Fund's liquidity representations to be an opinion, they were misleading by omission and thus actionable.

### c.     Defendants' "Hindsight" Argument Improperly Ignores Specific Contemporaneous Facts Showing Illiquidity

Defendants' arguments that the Complaint relies on hindsight to allege the illiquidity of

---

[8] Indeed, courts have determined that less concrete statements concerning liquidity are actionable, including authorities cited by defendants. *See Hawes v. Argo Blockchain plc*, 2024 WL 4451967, at *12 (S.D.N.Y. Oct. 9, 2024) (finding representation that "Company is confident that it possesses sufficient liquidity" was "false and/or misleading when made.").

[9] *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *17 (S.D.N.Y. April 2, 2020), is irrelevant because the Fund's liquidity misrepresentations were not couched in language suggesting opinion, such as think, believe, or expect.

the Fund's assets and relies on "subsequent events," Defs. Br. at 12, 16, ignore the Complaint's allegations. The Complaint alleges that the illiquid bonds shared economic indicia of persistent illiquidity, that these characteristics existed throughout the Class Period, and based on contemporaneous market data, the Fund could not liquidate without material negative price impact. Bonds that consistently represented over 15% of the Fund assets possessed the economic characteristics and attributes of illiquid assets throughout the Class Period, ¶¶81-87; 94-95, and were as high as 45% of the Fund's assets. ¶93.[10] These allegations are corroborated by empirical evidence that shows these assets were illiquid under the Fund's definition of an illiquid asset. ¶75. Defendants had information available to them at the time showing that these bonds could not be sold without harming their value and were therefore illiquid. ¶¶95, 100. On a motion to dismiss, these facts are accepted as true. *See IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021).

Moreover, contrary to Defendants' assertions, courts consider post-class period events, like the Fund's collapse, to corroborate conditions during the Class Period. *Novak v. Kasaks*, 216 F.3d 300, 312-13 (2d Cir. 2000) (finding event at end of class period "tends to support the plaintiffs' contention" that statements were false when made).

> ### d. The Fund's Liquidity Risk Representations Were Materially False and Misleading

Defendants' generic "liquidity risk" disclosures were materially misleading because the Fund's warning of risk "if a significant amount of the Fund's securities become illiquid" was made at a time when over 15% of the Fund's assets were already illiquid. ¶¶174-79. The Fund's failure to disclose then-ongoing illiquidity would cause a reasonable investor to make an overly optimistic

---

[10] In contrast to the Defendants' authorities, Defs. Br. at 16, these facts show that the Complaint alleges falsity at the time the statements were made.

13

assessment of the risk and a "generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250-51 (2d Cir. 2014); *Ray v. StoneCo Ltd.*, 2024 WL 4308130, at *10 (S.D.N.Y. Sept. 25, 2024) (citing *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004).[11] The cautionary language that Defendants rely on does not foreclose liability because it warned investors of a different contingency (future illiquidity) than that which the Complaint alleges was misrepresented. *See Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 729 (2d Cir. 1998); *see also Lian v. Tuya Inc.*, 2024 WL 966263, at *13-14 (S.D.N.Y. Mar. 5, 2024) (upholding claims that risk disclosures were misleading where they warned of different risk that did "not pertain to the specific risk that was realized.").[12]

### 2. Materially False Statements and Omissions About the Funds' Valuation of its Assets

Defendants represented to investors that the Fund's assets were valued at "market price" using "market-based" inputs from nationally recognized pricing services under board-approved procedures. ¶¶182-83, 185, 188. The Complaint plausibly alleges those representations were

---

[11] In *In re Proshares Trust II Sec. Litig.*, 2020 WL 71007, *7 (S.D.N.Y. Jan. 3, 2020), the "gravamen" of the complaint was failure to disclose that the fund's own conduct could result in losses in the future. In *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 396-98 (S.D.N.Y. 2022), the prospectus' disclosure that the company had already experienced internal control deficiencies undercut claims that "potential risk of ineffective internal controls" was misleading. Likewise in *Rubenstein v. Credit Suisse Grp. AG*, 457, F. Supp. 3d 289, 299 (S.D.N.Y. 2020), and in *Banco Safra S.A.-Cayman Islands Branch v. Andrade Gutierrez Int'l S.A.*, 2018 WL 1276847, at *3 (S.D.N.Y. Mar. 8, 2018), the companies disclosed that the allegedly undisclosed risk had already materialized. In sharp contrast, the Fund's representations did not disclose that more than 15% of the Fund's assets were already illiquid.

[12] Defendants' argument that the Complaint alleges "garden variety" mismanagement, Defs. Br. at 3, 19-20, mischaracterizes the Complaint. Unlike Defendants' authorities, which challenged business decisions or generalized governance failings untethered to concrete misstatements or omissions, the Complaint here alleges specific, affirmative material misrepresentations and omissions.

14

materially false and misleading because, unknown to investors, the pricing service systematically ignored current market trades—concrete and persuasive evidence of valuation—producing inflated, stale prices for the Fund's assets. ¶¶102-08. The exclusion of actual odd lot market transactions in determining value of the Fund's assets was a material fact that should have been disclosed to investors given the importance of valuation and NAV to investors. ¶¶104-06, 183-84.

Far from hindsight, the Complaint alleges detailed, bond-by-bond examples that show the Fund's valuations exceeded current market transactions during the Class Period. ¶¶108-36. The Fund's sale of bonds at the end of the Class Period at a value 82% lower than the Fund's valuations support the plausibility of the Complaint's allegations that the Fund's valuations were materially overstated. ¶¶96-98.

For one of the Fund's Level 3 holdings, Next Renewable Fuels' preferred stock, the Fund valued its investment at over $5 million during the Class Period, when, in fact, it was worthless. ¶¶137-47. Contrary to Defendants' argument that there is no explanation for these allegations, the Complaint alleges in detail why the investment was worthless starting in November 2023. ¶¶139-47. The value of Next Renewable Fuels' preferred stock was tied to a proposed special purpose acquisition company ("SPAC") merger. ¶141. However, the SPAC merger was terminated in November 2023, an event that rendered the investment worthless. ¶144. Long after the merger was terminated, the Fund continued to value the investment at over $5 million and was one of the Fund's top ten positions. ¶¶145-47. After the Fund collapsed, under a new auditor, the Fund admitted that it was worthless. ¶147.

Defendants' arguments that the Complaint fails to allege material misstatements about valuation are meritless because they mischaracterize the Complaint and ignore objective facts that

15

preclude a finding that the representations are inactionable opinions and judgment-based claims. Defs. Br. at 20-23.

### a. The Fund Misrepresented That Market Data Was Used to Value the Fund's Assets

Contrary to Defendants' arguments, the Fund's registration statements and prospectuses did not merely state that they had "policies and procedures" and were not "simple and generic" aspirational assurances of compliance. The Complaint alleges that market transactions—actual arm's-length trades—existed, the Fund's pricing services and Defendants had access to those transactions and ignored them by design, resulting in inflated and stale values, and as a result, Fund assets were not valued at current market price using "market-based inputs," contrary to Defendants' representations. ¶¶104-07. This was a material omission of a fact that a reasonable investor would find significant, and that altered the total mix of information made available to investors, particularly where the undisclosed truth concerned the Fund's NAV, and resulted in massive overstatements in asset value and in "serious" and "substantial" harm to investors. *Jinkosolar*, 761 F.3d at 251; *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988).

Far from vague or aspirational statements, the "tenor of the Fund's disclosures" is that the pricing service would use current market data, both objective and sales based, which was not true. *Oppenheimer*, 838 F. Supp. 2d at 1148; *Hunt*, 159 F.3d at 728-30 (noting that representation that fund will use procedures is actionable where Fund did not actually use those techniques).[13] The Complaint alleges objective facts showing that the Fund's disclosures did not match the reality of what a reasonable investor would take away from its disclosures. ¶¶102-08, 184-86. A reasonable

---

[13] Defendants' authorities are distinguishable. *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199 (S.D.N.Y. 2018) involved aspirational commitments to food safety in the future unmoored from concrete contradictions, *Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019), addressed generic ethics and compliance language, and *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393 (S.D.N.Y. 2020), involved disclosures that expressly disclaimed sufficiency of procedures and management.

16

investor would not understand that the pricing service was failing to account for current market-based transactions based on the Fund's disclosures that represented the opposite. *Jinkosolar*, 761 F.3d at 251.

The Complaint also alleges that the Fund departed from the procedures and valuation methods represented to investors. ¶¶184-86. The Fund's registration statements and prospectuses represented the pricing service "utilize[ed] a range of market-based and security specific inputs and assumptions, including price quotations from broker-dealers making markets in such instruments, transactions in comparable investments and considerations about general market conditions." ¶185. As in *Jinkosolar*, the Fund described its valuation procedures in "confident detail." 761 F.3d at 251. However, the Fund's pricing service ignored odd lot transactions that were the only contemporaneous indicators of market value and this was not disclosed to investors.

> **b.    The Complaint Alleges Objective Facts That Contradicted the Fund's Representations**

Contrary to Defendants' attempt to recast the Complaint as a dispute regarding how to conduct a valuation, the Complaint alleges that the Fund falsely represented it utilized a pricing service that based valuation on "market price" and "market-based inputs." ¶¶182-89. Once Defendants chose to frame valuation as reflecting market prices and market data, not disclosing that the Fund's pricing service ignored the only contemporaneous market evidence available—particularly in a retail-dominated muni market where odd-lot trades may be the sole price discovery mechanism—was materially misleading. ¶¶106-07, 124-35. Ignoring market data while stating that assets are valued at "market price" is an objective misrepresentation, not a subjective judgment call.[14]

---

[14] In contrast, *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) concerned statements about goodwill that did not reference an "objective standard such as market price."

Defendants' assertion, Defs. Br. at 3, 21-22, that there is no allegation that Defendants disbelieved the pricing service is a red herring. There is no requirement under sections 11 or 12 of the Securities Act to show that Defendants knew that the pricing services did not include odd lot transactions in determining value. *See Pappas v. Qutoutiao Inc.*, 2024 WL 4588491, at *2 (2d Cir. Oct. 28, 2024) ("The signer of, or underwriter with respect to, a registration statement under Section 11 of the Securities Act or the offeror or seller of a security under Section 12 may negligently fail to disclose conduct that another has engaged in intentionally.").

Even assuming, *arguendo*, the Court considers the Fund's representations that it utilized a pricing service that based valuation on "market price" and "market-based inputs" to be an opinion, market transactions existed at dramatically lower prices and the pricing service ignored those transactions. The Fund's disclosures omitted these material facts and therefore conflicted with the information a reasonable investor would take from the Fund's disclosure, rendering the statements materially misleading under *Omnicare*.[15]

Finally, the Complaint does not allege noncompliance with SEC Rule 2a-5 and it does not assert a particular method of valuation was required. Again, the Complaint focuses on the Fund's representation that the pricing service utilized current market data, which a reasonable investor would find misleading by omission of the material fact that the Fund's pricing service ignored current odd-lot transactions.

### c.    The Next Renewable Fuels Allegations Are Based on Objective Facts

Defendants assert that the Complaint's allegation that Next Renewable Fuels was worth "zero" is conclusory, provides "no explanation" and merely disputes Defendants' valuation

---

[15] Defendants' assertion, Defs. Br. at 2, 21, that an opinion is inactionable unless the speaker did not disbelieve the belief professed, was rejected in *Omnicare. See Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020).

opinion. However, as outlined above, Defendants ignore that the Complaint alleges specific facts that existed by November 2023 that showed the investment was worthless. ¶¶139-47. Continuing to value an asset whose value was premised on a transaction that had definitively failed in November 2023 is not a subjective disagreement—it was a misstatement of Next Renewable Fuel's economic reality and contradicted security-specific facts available at the time. Moreover, the Fund's admission that its investment was worthless after the Class Period confirms the plausibility of these allegations.

### d. The 2022 Registration Statements Failed to Disclose Valuation Risk as a Principal Risk

Defendants assert that the Fund disclosed valuation risk in the 2022 registration statements and prospectuses. However, valuation risk is not stated among the "Principal Risks of Investing in the Funds." *See* ECF No. 113-6 at 15 of 110. Given the magnitude of overvaluation, failure to highlight valuation risk as a principal risk, as the SEC requires, was materially misleading.

### 3. Materially False Statements and Omissions About the Funds' Investment in Defaulted Securities

Defendants represented that the Fund "does not expect" investing in defaulted securities to be a "significant" strategy. ¶¶148, 190. However, defaulted securities comprised up to 35% of total assets and over $60 million—well within the meaning of a "principal strategy" under SEC regulations requiring disclosure. ¶¶71-72, 148-49. Moreover, the Fund's 2024 financial statements understated its exposure to defaulted securities and violated SEC Regulation S-X because a material amount of defaulted securities were omitted from the Fund's financial statements incorporated into its 2024 Semi-Annual and Annual Reports. ¶¶150-52.

Defendants raise a host of convoluted arguments for dismissal, none of which has merit. Defendants assertion that an "investment strategy" is vague and does not express an objective fact mischaracterizes the Complaint and disputes facts. Unlike the authorities cited by Defendants that

involved broad and general statements of optimism or puffery, Defs. Br. at 23-24, the Fund was subject to SEC regulations that mandate disclosure of a "principal investment strategy" and that establish criteria that the Complaint alleges were satisfied. ¶¶71, 190-91.[16] Far from being vague or unspecific, the Complaint alleges objective facts that put the Fund's investment in defaulted securities within the SEC's definition of a "principal investment strategy," requiring disclosure to investors. ¶71.[17]

The Fund's disclosures that it "may" in the future invest in defaulted municipal bonds and that defaulted municipal bonds are considered speculative provide no protection because they failed to address the different, undisclosed risk that had already materialized—investing in defaulted securities was already a principal investment strategy of the Fund at that time. Boilerplate or vague risk disclaimers that merely warn investors of general risks—such as investments being "speculative"—have repeatedly been held insufficient to invoke the bespeaks caution doctrine. *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 647 (S.D.N.Y. 2012); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away"). The

---

[16] In *N.Y. City Pub. Pension Funds v. Coupang, Inc.*, 2025 WL 2613650, at *12 (S.D.N.Y. Sept. 10, 2025), the court found statements that the company was "leading the industry" and had "the best working condition jobs" were insufficient to give rise to a duty to disclose. Here, the Fund had a duty to disclose its principal investment strategies under SEC regulations. Likewise, the issuers in *In re Micro Focus Int'l Plc Sec. Litig.*, 2020 WL 5817275, at *12 (S.D.N.Y. Sept. 29, 2020), and *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*, 333 F. Supp. 3d 338, 349 (S.D.N.Y. 2018) were not subject to SEC regulations that required disclosure to mutual fund investors.

[17] Defendants' argument that no "bond was in default when purchased," Defs Br. at 23, misses the point. At the time the statements were made, the Fund's massive exposure to defaulted securities was a principal investment strategy that should have been disclosed.

Fund's boilerplate warning failed to inform a reasonable investor that the Fund's investment in defaulted securities was already a principal investment strategy.

Defendants cite authorities that provide for protection under the safe harbor provisions of the Private Securities Litigation Reform Act ("PSLRA") for forward-looking statements. Defs. Br. at 24. However, the protections accorded to forward-looking statements do not apply to representations in registration statements. 15 U.S.C. § 77z-2(b)(2)(B); 15 U.S.C. § 78u-5(b)(2)(B). Accordingly, this argument should be rejected out of hand.

Equally unavailing is Defendants' focus on forward-looking language from the SEC criteria to assert that the representations only reflect the Fund's future goals. Defs. Br. at 24. Defendants' disclosures were materially false and misleading at the time they were made because the Fund already had a principal investment strategy of investing in and a massive exposure to defaulted securities, and failed to disclose it. By omitting this material fact, the Fund created the misimpression that its then current principal investment strategy did not involve investing in defaulted securities. ¶¶149-52. For the same reason, Defendants' materially misleading representations about the Fund's current holdings are not opinions about future expectations.

Finally, Defendants do not dispute the Complaint's allegation that the Fund failed to disclose defaulted securities in the Fund's 2024 financial statements, violating SEC disclosure requirements. ¶¶150-52. Instead, relying on documents outside the Complaint, Defendants improperly dispute the materiality of the admitted omission, which is inappropriate at this stage. *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 658 (S.D.N.Y. 2004) (stating materiality is "a mixed question of law and fact."). The absence of these defaults in the Fund's 2024 financial statements would lead a reasonable investor to believe the Fund's portfolio had fewer defaulted securities compared to 2022 or 2023, and therefore the Fund's assets were stronger credits than, in

21

fact, they were. *See Wang v. Cloopen Grp. Holding Ltd*., 661 F. Supp. 3d 208, 226-27 (S.D.N.Y. 2023) (finding defendant's omission of information necessary for investors to accurately assess liabilities materially misleading). Defendants' materiality arguments to the contrary, based on extraneous documents and information outside the Complaint, cannot be credited on a motion to dismiss.

### 4. Materially False Statements and Omissions About the Funds' Sector Risk

Finally, the Complaint alleges that the Fund's boilerplate, generic "sector emphasis risk" disclosure represented this concentration as a hypothetical risk, yet the Fund held nearly 19% of net assets in bonds tied to a single developer in the waste-to-marketable product sector—exposing investors to correlated and contagion risk that was not disclosed. ¶¶153-65. Unknown to investors, the undisclosed risk materialized during the Class Period as the bonds experienced interdependent and concurrent defaults and later were sold at prices significantly below the Fund's valuations. ¶¶160-63. Contrary to Defendants claims, nothing in the Fund's registration statements and prospectuses would have alerted a reasonable investor that this risk had already materialized.

While Defendants do not dispute the Fund's concentration in a single developer in the waste-to-marketable product sector and that these bonds comprised a significant portion of the Fund's portfolio, Defendants argue that when they "issued their warnings, the losses had not yet occurred, so the risk had not materialized." Defs. Br. at 27. This argument ignores the Complaint's allegations and improperly conflates the undisclosed material risk with the losses investors later suffered.

Under *Lentell v. Merrill Lynch & Co., Inc*., 396 F.3d 161, 173 (2005), the misstatement or omission must conceal something from the market that, when later disclosed, negatively affected the security's value. Contrary to Defendants' argument, the undisclosed risk from this

22

concentration did adversely affect the Fund's portfolio. ¶161. The concentration in the Jefferson Enterprise bonds gave rise to undisclosed correlated risks that had a massive negative impact on the Fund's assets as the bonds experienced correlated defaults during the Class Period. ¶¶162-63. This concealed risk was later disclosed to investors at the end of the Class Period when the securities were ultimately sold for pennies on the dollar. ¶¶9-10, 161-63, 270.[18]

Defendants further assert that information about the Fund's concentration in a single developer was "available to both parties." Not so. The Complaint alleges that the Fund's Top 10 Holding's reports, which were available on the Fund's website, failed to disclose that these bonds were concentrated in a single developer in the waste-to-marketable product sector. ¶164 (chart showing top ten holdings). Defendants brazenly assert that they "had no obligation to disclose information" "readily 'available to both parties'" and, in effect, argue that investors in a diversified mutual fund should have combed through an industry website to piece this information together. This argument not only flies in the face of the Securities Act disclosure requirements but also strains credulity.

Simply because Defendants contend some of the data about specific bonds held by the Fund can be found in different corners of the internet and then analyzed and pieced together by experts in the debt securities markets, did not relieve the Fund of its disclosure obligations. *See City of Roseville Emp. Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 415 (S.D.N.Y. 2011). "[I]nformation is in the public domain when it has been reported by news and media outlets[,]" not when it is somewhere in a niche industry specific database.[19] *Bettis v. Aixtron SE*,

---

[18] Defendants' loss causation argument is inapplicable to the Securities Act claim because loss causation is not an element of a claim of either section 11 or 12.

[19] Defendants' authorities are in accord. In *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 608 (S.D.N.Y. 2022), the information was published in *The New York Times* and *The Wall Street*

2016 WL 7468194, at *12 (S.D.N.Y. Dec. 20, 2016); *In re Bank of America Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 290, 300-02 (S.D.N.Y. 2010) ("*BofA*") (rejecting arguments that press reports and scattered SEC filings provided adequate notice to shareholders and noting that requiring investors to synthesize such information would undermine securities law disclosure principles). Importantly, this information could not be part of the total mix of information because it was not *distributed* to investors in the registration statements and prospectuses. *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993).[20]

## C.      The Complaint's Securities Act Claims Are Timely

Defendants' assertions that the Complaint's Securities Act claims are time barred by the statute of limitations, 15 U.S.C. § 77m, are meritless because they depend on documents and information that are extraneous to the Complaint and that Defendants use to improperly dispute facts and for their truth. For the reasons explained in the Motion to Strike, the Court should strike

---

*Journal*, which are widely circulated newspapers.

[20] In contrast, Defendants' authorities involve disclosure of risks in issuer SEC filings and public investor conference calls, not on an obscure industry website unaffiliated with the Fund and that is not mentioned in the registration statements or prospectuses. *See Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *8 (S.D.N.Y. Jan. 14, 2010) (disclosure in issuer's prospectus); *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 398 (S.D.N.Y. 2018) (disclosure in issuer's SEC filings); *SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*, 2010 WL 2473595, at *4 (S.D.N.Y. June 17, 2010) (disclosures on public investor conference calls and issuer's SEC filings); *Goldschein v. Avangrid*, 2025 WL 3707500, at *3, 6-7 (S.D.N.Y. Dec. 22, 2025) (disclosure in SEC filings, news reports and public actions of governor); *New Jersey Carpenters Health Fund v. Residential Cap., LLC*, 2010 WL 1257528, at *7 (S.D.N.Y. Mar. 31, 2010) (disclosure in SEC filings, trade journals and press article and no duty to disclose). In *In re Norfolk Southern Corp. Bond/Note Sec. Litig.*, 2025 WL 641089, at *4 (S.D.N.Y. Feb. 27, 2025), there was no allegation that the disclosed accident data in SEC filings was incorrect, and the court rejected plaintiffs' theory that their alternative analysis should have been disclosed. Here, the Fund's registrations statements and prospectuses did not disclose the "problems with each obligor," as Defendants suggest, Defs Br. at 20.

24

the 2023 Morningstar editorial and Defendants' factual assertions based on it and other extraneous information.

Assuming, *arguendo*, the Court considers the Morningstar editorial in resolving the Motion (which it should not), it does not meet the high burden to demonstrate that investors were on notice of the probability of violations of the Securities Act under the discovery rule established by the Supreme Court in *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 646-47 (2010) and followed by the Second Circuit and this Court.

<strong>1.  The Morningstar Editorial Does Not Reveal the Undisclosed Negative Facts Alleged in the Complaint</strong>

Defendants use the Morningstar editorial to make unsupported factual arguments and its contents do not "relate[] *directly* to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants." *Meyer v. Seidel*, 89 F.4th 117, 135 (2d Cir. 2023); *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162-63 (2d Cir. 2025). Indeed, Defendants offer a crabbed and misleading characterization of the Morningstar editorial to dispute facts alleged in the Complaint. Nothing in the Morningstar editorial accuses any Defendant of any wrongdoing. At best, the Morningstar editorial suggests the potential for liquidity, valuation and concentration risks—risks inherent to all mutual fund investors—but not the *probability* of the wrongful conduct alleged in the Complaint. The Morningstar editorial, in essence, repeats the Fund's risk warnings that, as explained above, were materially false and misleading at that time. ¶¶174, 185. Indeed, nothing in the editorial discloses that, at that time:

- more than 15% of the Fund's assets were illiquid;
- the Fund's pricing service ignored actual market transactions in determining valuation of the Fund's bonds;

25

- the Fund's board of trustees was massively overstating the value of the Fund's investment in Next Renewable Fuels;

- the Fund's investment in defaulted securities was, in fact, a principal investment strategy of the Fund as defined by the SEC; or

- the Fund had a sector concentration that exposed investors to correlated risks and contagion risk. ¶¶167-98.

Under *Merck*, the statute of limitations begins to run only when a reasonably diligent plaintiff discovers the facts that are the basis of the claim and can plead those claims adequately. *Nomura*, 873 F.3d at 120; *Meyer*, 89 F.4th at 135; *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 799 F. Supp. 3d 310, 337 (S.D.N.Y. 2025). This "storm warning" must be "specific enough to provide an ordinary investor with indications of the *probability* (not just the *possibility*) of'" a violation, and it must "relate[] directly" to core allegations. *Nomura*, 873 F.3d at 120. That is not the case here.

"Knowledge of the facts which aroused plaintiff['s] suspicions as to the defendant['s]" honesty "[i]s not necessarily knowledge of facts from which the alleged fraud[ ] . . . might be reasonably inferred." *Meyer*, 89 F.4th at 135 (citation omitted). A report that mentions "*possible* mismanagement of conflicts of interest" is "insufficient to raise the probability of fraud." *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 506 (S.D.N.Y. 2009), *opinion corrected on denial of reconsideration*, 612 F. Supp. 2d 397 (S.D.N.Y. 2009) (emphasis added).

Furthermore, as discussed in the Motion to Strike, Defendants have not established the fact of publicity of the Morningstar editorial. There is no evidence in the record concerning when the Morningstar editorial was published, if it was published in the same form as Defendants represent, what the publicity was or if it was even accessible to investors at the time. "In assessing whether

publicly available news and other reports put a plaintiff on inquiry notice, courts consider the ubiquity of the reports, and their content." *Meyer*, 89 F.4th at 135. To trigger inquiry notice, press reports must be accessible, "widespread and prominent." *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 429, 432 (2d Cir. 2008). Courts are reluctant to find an article provides inquiry notice where the "specialty publication coverage is relatively minimal and [it does] not know the publications' circulation or the extent to which a reasonable investor would be aware of the limited coverage." *Id.* at 432. Moreover, Defendants fail to show that any investor was aware of it or that its contents could support the factual inferences drawn. *Meyer*, 89 F.4th at 137.[21]

Relying on documents outside the Complaint, Defendants argue "in the days following the Morningstar [editorial], the Fund's NAV moderately declined," suggesting that investors reacted negatively to it. Defs. Br. at 9-10. In truth, shares of the Fund ***increased*** in the two trading days after the date of the Morningstar editorial was purportedly dated, and a slight decline in NAV on December 29, 2023 is plausibly explained by the Fund's dividend payment.[22]

Likewise, relying on disclosures regarding the Fund's 2023 Annual Report that are not cited in the Complaint, Defendants assert that the Fund's late filing of the 2023 Annual Report and the 2023 Annual Report disclosed that Fund had mispriced certain securities. Defs. Br. at 8-9.

---

[21] In *NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, 2013 WL 620257, at *10 (S.D.N.Y. Feb. 15, 2013), *Youngers v. Virtus Invs. Partners, Inc*., 195 F. Supp. 3d 499, 520-21 (S.D.N.Y. 2016), and *Coupang, Inc*., 2025 WL 2613650, at *33, news triggering the statute of limitations was widely circulated in *The Wall Street Journal*, *Barron's*, and *The Financial Times*, or disclosed in issuer SEC filings. Here, there is no evidence the Morningstar editorial was widely circulated and it was not in the Fund's disclosures.

[22] *See* Declaration of Jeffrey P. Campisi in Support of Lead Plaintiff's Motion to Strike and in Opposition to Defendants' Request for Judicial Notice, or, in the Alternative, to Convert the Motion to Dismiss into a Motion for Summary Judgment, dated April 23, 2026 ("Campisi Decl."), Ex. 1 at 1, 3, 5.

27

Nothing in the disclosures indicates that the "complications" described in the disclosures had anything to do with the materially defective pricing service utilized by the Fund, or otherwise suggests any of the wrongful conduct alleged in the Complaint.

Tellingly, after these disclosures (Nov. 8 and 24, 2023), the Fund's NAV per share "did not have any significant movement following" the filings, a fact that weighs against finding notice as a matter of law. *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 195 (2d Cir. 2003).[23] Notably, in contrast to Defendants' authorities, the Fund was not downgraded during the Class Period and the NAV did not precipitously decline until June 13, 2025.[24] Moreover, after the disclosures, Defendant Crate reassured investors, touting the Portfolio Manager Defendants' "solid track record" and ability "to achieve consistent performance and generate alpha." ¶46. Courts are reluctant to find that public disclosures provided inquiry notice where disclosures were tempered with positive statements. *See Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 229 (S.D.N.Y. 1999); *Moody's*, 599 F. Supp. 2d at 506.

For these reasons, Defendants fail to meet their heavy burden to establish their affirmative defense.[25]

---

[23] *See* Campisi Decl., Ex. 1 at 1, 3, 5.

[24] In *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2010 WL 3239430, at *8 (S.D.N.Y. Aug. 17, 2010), the securities at issue were downgraded and delinquencies skyrocketed over a year before the claims were brought, and in *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 423 (S.D.N.Y. 2005), the statute of limitations began to run upon a precipitous decline in stock price. In *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 347 (S.D.N.Y. 2012), plaintiffs had notice of claims over a year before the action was filed because the same plaintiffs were party to a prior suit that alleged the same facts, undermining their contention that they could not have known about the wrongful conduct.

[25] Defendants' argument that the statute of repose bars "certain" section 12(a)(2) claims "predating July 24, 2022" is irrelevant. Defs. Br. at 30. The Class Period begins on July 29, 2022 and therefore Defendants' argument concedes that sales during the Class Period based on the February 2022 Prospectus and Summary Prospectus are not time barred and the Complaint did not withdraw these

D.      The Complaint Adequately Alleges a Proxy Disclosure Claim

Defendants argue that the Complaint fails to adequately allege a claim under Section 14(a) and Rule 14a-9 because the 9/5/24 Registration Statement and Joint Proxy/Prospectus (the "Proxy"): (1) does not allege that the Proxy was "an essential link," (2) the Complaint fails to allege loss causation, (3) that negligence has not been alleged, and (4) no relief can be granted. Defs. Br. at 30-34. Defendants' arguments are meritless.

1.      The Proxy Was An Essential Link

The Complaint alleges that the Proxy solicitation was an "essential link" to the accomplishment of the Reorganization. *Enzo*, 2021 WL 4443258, at *10 (stating transaction causation requires showing "how the proxy solicitations at issue were an 'essential link' to the accomplishment of the wrongful transaction"). The Complaint alleges that the Proxy contained materially false and misleading statements and omissions, and that these misstatements and omissions were material because a reasonable shareholder would consider them important in deciding how to vote on the Reorganization. ¶¶263, 265. The Proxy was an essential link in the transaction because the Reorganization could not have occurred without the shareholder vote and could not have been consummated without shareholder approval. ¶267. There is no requirement to allege "but for" causation to establish the Proxy was essential to the Reorganization. *See BofA*, 757 F. Supp. 2d at 292 n.3; *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970).

Defendants argue that a plaintiff "must allege that the misrepresentation induced [him] to enter into the transaction . . . That is, but for the fraudulent statement or omissions, the plaintiff would not have entered into the transaction." Defs. Br. at 30-31. This is wrong. Transaction causation is alleged where "the proxy solicitation itself, rather than the particular defect in the

_____

claims.

solicitation materials, was an essential link in the accomplishment of the transaction." *BofA*, 757 F. Supp. 2d at 291 (quoting *Mills*, 396 U.S. at 385); *Koppel v. 4987 Corp.*, 167 F.3d 125, 137 (2d. Cir. 1999); *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1099-100 (1991); *see Enzo*, 2021 WL 4443258, at *9; *In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 55-56 (2d Cir. 2025).

Defendants' argument that "the challenged statements could not have impacted the vote because the Fund's procedures and risks would remain unchanged irrespective of whether the Reorganization was approved" and therefore they "could not have been an essential link in affecting the proposed corporate action" is a red herring. Defs. Br. at 31. Whether the challenged statements impacted the vote is irrelevant because the Complaint alleges that the challenged statements are material and that the proxy solicitation *itself* was an essential link in the accomplishment of the transaction.[26]

## 2.    The Complaint Adequately Alleges Loss Causation

Defendants' argument that the Complaint fails to allege loss causation is likewise misplaced. Defs. Br. at 32. "To plausibly allege loss causation under Section 14(a), a plaintiff must satisfy 'Rule 8 notice pleading standards,' which requires 'some indication of the loss and the causal connection that the plaintiff has in mind.'" *Enzo*, at *9 (quoting *Bricklayers and Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 245 (S.D.N.Y. 2012)). The Complaint alleges that material misstatements concealed material risks from investors and caused economic losses. ¶270. The risks concealed from investors were foreseeable and were within the zone of risks concealed by the misstatements in the Proxy, and the loss suffered by

---

[26] Defendants' authorities, Defs. Br. at 30-31, are distinguishable because they are actions under section 10(b) of the Exchange Act or are decisions that improperly graft section 10(b)'s but for causation element onto a section 14 claim, or where the court found the alleged misstatements were immaterial.

investors, in material part, was caused by the materialization of the concealed risks after the Class Period. *Id.* As a direct and proximate result, investors suffered damages, including loss of the fair value of their shares and being deprived of an informed vote. *Id.* These allegations are sufficient to establish loss causation under Section 14(a). *Bricklayers*, 866 F. Supp. 2d at 245-46.

### 3.     The Complaint Adequately Alleges Defendants' Negligence

Defendants' argument that the negligence claims are generic ignores the Complaint's allegations. The Complaint alleges Defendants Crate, Montague, Medugno, Spencer, the Easterly Trust, EIP, the MPS Trust, Wiedmeyer, Kern, Massart, Swanson, Rush and Principal Street signed and participated in the preparation and dissemination of the Proxy and caused their names and representations to be included in the Proxy. ¶260. By signing and participating in the preparation of the Proxy and by soliciting proxies from investors, each of these defendants had a duty to ensure that the Proxy fully and fairly disclosed all material facts to allow an investor to make an informed investment decision. *See In re Willis Towers Watson Plc Proxy Litig.*, 439 F. Supp. 3d 704, 714-15 (E.D. VA 2020); *BofA*, 757 F. Supp. 2d at 288. The Complaint adequately alleges these defendants' duties (¶¶260-62), breach (¶¶263-66), and damages. ¶270.

Defendants' assertion that negligence claims under Section 14 must be pleaded "with particularity" and "give rise to a strong inference of negligence" is wrong. Defs. Br. at 33. Courts have found that it makes no sense to impose an elevated pleading standard to a negligence claim. "[B]etter reasoned cases have followed the decision of the Court of Appeals for the Seventh Circuit in *Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009) (Posner, J.), which held that the elevated pleading standard does not apply to Section 14(a) claims that sound in negligence because 'negligence is not a state of mind[.]'" *comScore*, 268 F. Supp. at 559 (quoting *Beck*, 559 F.3d at 682); *accord BofA*, 757 F. Supp. 2d at 321; *In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303,

31

363-64 (S.D.N.Y. 2025). Most important, the Second Circuit followed *Beck*'s reasoning in *Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 408-09 n.90, 95 (2d Cir. 2016).[27]

### 4.      Investors are Entitled to Seek Actual Damages

Defendants' argument that only injunctive relief is available is wrong. Defs. Br. at 33. The Exchange Act provides that claims are limited to "actual damages." 15 U.S.C. § 78bb. "This limitation applies to suits brought to recover damages for the violation of section 14(a) of the Act, since they are provided for by implication by that section." *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 781 (3d Cir. 1976). The Complaint seeks recovery of damages, not injunctive relief. ¶270, Prayer for Relief. Recovery "is not limited to out of pocket loss, a diminution in the value of one's investment, but may include loss of a possible . . . benefit . . . unless the loss is wholly speculative." *Id.*; *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1304 (7th Cir. 1973).[28]

### E.      The Complaint Adequately Alleges Control Person Claims

All of the Defendants, except for the Portfolio Manager Defendants and Defendants PSP and EIP, concede that control person claims have been adequately alleged. Whether a person

---

[27] The authorities relied upon by Defendants to assert that a strong inference of negligence is required involved allegations of fraud, unlike here, and were subject to Rule 9(b)'s particularity requirements. *See Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at \*13 (S.D.N.Y. May 9, 2003) (dismissing claims under Rule 9(b)); *Bouchard-A v. N. Genesis Acquisition Corp.*, 2025 WL 1808469, at \*8 (S.D.N.Y. July 1, 2025) (finding section 14(a) claims sounded in fraud and Rule 9(b) applied). *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 529 (S.D.N.Y. 2021) is distinguishable because central to the court's resolution was application of the PSLRA's safe harbor provision for forward-looking statements, which requires "actual knowledge" of the false or misleading nature of the statement to impose liability. *See* 15 U.S.C. § 78u-5(c). As noted above, the claim here "is not based on and does not sound in fraud" (¶243), which Defendants do not dispute, and the PSLRA safe harbor is inapplicable.

[28] Defendants' reliance on *Silberstein v. Aetna, Inc.*, 2014 WL 1388790, at \*3-4 (S.D.N.Y. Apr. 9, 2014) is misplaced. In *Silberstein*, plaintiff sought to enjoin a future proxy vote. Defendants conflate a "transaction[] that would be difficult to reverse if [it] were not enjoined" with a transaction, such as Reorganization, that already occurred and Plaintiff does not seek to enjoin.

qualifies as a control person "is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 427 (S.D.N.Y. 2020) (citation omitted).

Contrary to Defendants' arguments, the Complaint adequately alleges control under sections 15 of the Securities Act and 20(a) of the Exchange Act. The Complaint alleges that Defendants Willis and Pulire controlled the MPS and Easterly Trusts' issuance of shares of the Fund and the Proxy through their roles as portfolio managers of the Fund and executives of PSP and EIP. ¶¶30-31, 236-37, 275, 278. These allegations of control are more than sufficient to give Defendants "fair notice of the claim that [they were] control person[s] and the grounds on which that claim rests, which is all that is required at this stage." *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 401 (S.D.N.Y. 2007); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 413, 427 (S.D.N.Y. 2010). Moreover, given the claims alleged are strict liability and negligence, it makes little sense to graft a "culpable participation" element onto nonfraud claims.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion should be denied in its entirety.

Dated: April 23, 2026                      Respectfully submitted,

                                        **KAPLAN FOX & KILSHEIMER LLP**

                                        /s/  Jeffrey P. Campisi
                                        Frederic S. Fox
                                        Jeffrey P. Campisi
                                        Donald R. Hall
                                        Brandon Fox
                                        Clara Abramson
                                        800 Third Avenue, 38th Floor
                                        New York, NY 10022
                                        T: (212) 687-1980
                                        F: (212) 687-7714
                                        ffox@kaplanfox.com
                                        jcampisi@kaplanfox.com
                                        dhall@kaplanfox.com

33

bfox@kaplanfox.com
cabramson@kaplanfox.com

*Lead Counsel for Lead Plaintiff Richard*
*Fulford and the Proposed Class*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law contains 10,734 words and complies with the type-volume limitation of Local Civil Rule 7.1(c) of the Local Rules of United States District Courts for the Southern and Eastern District of New York, dated January 2, 2025, and Rule 4(b) of the Court's Individual Rules of Practice in Civil Cases, and the Court's February 26, 2026 Revised Scheduling Order (ECF No. 104). I also certify that this brief complies with the typeface and type style requirements of Local Civil Rule 7.1(b)(1)(2)(3).

*/s/ Jeffrey P. Campisi*
Jeffrey P. Campisi

**CERTIFICATE OF SERVICE**

I, Jeffrey P. Campisi, hereby certify that, on April 23, 2026, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Jeffrey P. Campisi*
Jeffrey P. Campisi

35