**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTERLY ROCMUNI HIGH INCOME MUNICIPAL BOND FUND | 25-cv-6028 (DLC) |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STRIKE AND IN OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, OR, IN THE ALTERNATIVE, TO CONVERT THE MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT**

Frederic S. Fox
Donald R. Hall
Jeffrey P. Campisi
Brandon Fox
Clara Abramson
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
F: (212) 687-7714
jcampisi@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com
bfox@kaplanfox.com
cabramson@kaplanfox.com

*Lead Counsel for Lead Plaintiff Richard Fulford and the Proposed Class*

Dated: April 23, 2026

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      PRELIMINARY STATEMENT .................................................................................... 2

II.     ARGUMENT ................................................................................................................. 4

       A.      The Extraneous Exhibits Are Not Cited in, Relied on, or Integral to the
               Complaint ........................................................................................................ 4

       B.      Exhibit 3 Is Not Judicially Noticeable and Defendants Rely on It to
               Dispute Facts Alleged in the Complaint and for Its Truth. ............................. 5

       C.      Exhibit 41 Is Not Cited in the Complaint, and Defendants' Suggested
               Inferences Based on Exhibit 41 Misrepresent Facts and Are Misleading ............ 12

       D.      Exhibits 21-24 Are Not Cited, Referred to or Relied upon in the
               Complaint and Defendants Seek Factual Inferences in Their Favor .................... 13

       E.      Defendants Rely on Exhibits 31 and 32 to Dispute Facts Alleged in the
               Complaint ...................................................................................................... 14

       F.      Exhibits 33-35 Are Not Subject to Judicial Notice and Defendants
               Misrepresent their Contents. ......................................................................... 15

       G.      Exhibits 36-38 Are Not Judicially Noticeable and Defendants
               Misrepresent Facts Based on Exhibits 36-38 ............................................... 16

       H.      Exhibits 39-40 Are Introduced for Their Truth and Used to Dispute Facts
               Alleged in the Complaint .............................................................................. 17

III.    IF THE COURT CONSIDERS THE DISPUTED EXHIBITS, IT MUST DO SO
       IN THE CONTEXT OF A MOTION FOR SUMMARY JUDGMENT AND
       PERMIT DISCOVERY ............................................................................................. 19

IV.     EXHIBITS 1 AND 2 SHOULD BE STRICKEN ......................................................... 20

V.      CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................... 20

*Atlantic Mut. Ins. Co. v. Lightolier*,
2002 WL 32124736 (D. Conn. Nov. 22, 2002) ........................................................... 20

*Azurdia v. City of New York*,
2019 WL 1406647 (E.D.N.Y. Mar. 28, 2019)............................................................. 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................... 20

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).......................................................................................... 4

*Citgo Petroleum Corp. v. Starstone Ins. SE*,
2023 WL 7547441 (S.D.N.Y. Nov. 10, 2023), *aff'd sub nom. CITGO Petroleum
Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368 (2d Cir. 2025) ........................... 6, 8

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)...................................................................................... 4, 11

*Eden Alpha CI LLP v. Polished.com*,
763 F. Supp. 3d 270 (E.D.N.Y 2025) ....................................................... 13, 16, 17

*Evans v. Associated Banc-Corp*,
2022 WL 4638092 (E.D. Wis. Sept. 30, 2022).............................................................. 9

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000)................................................................................... 12, 17

*Garber v. Legg Mason, Inc.*,
347 F. App'x 665 (2d Cir. 2009) .................................................................................... 7

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)........................................................................................ 11

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020).......................................................................... 13

*Great Mill Rock LLC v. Stellex Cap. Mgmt. LP*,
2020 WL 5370626 (S.D.N.Y. Sept. 4, 2020)............................................................... 14

*In re Acadia Pharms. Inc. Sec. Litig.*,
   2020 WL 2838686 (S.D. Cal. June 1, 2020)..................................................................... 21

*In re Manning*,
   620 B.R. 199 (Bankr. W.D.N.Y. 2020) ............................................................................ 15

*In re Merrill Lynch & Co.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003)................................................................................ 7

*In re Paine Webber Sec. Litig.*,
   1992 WL 725359 (S.D.N.Y. Sept. 18, 1992).................................................................... 21

*In re Purdue Pharma L.P.*,
   2025 WL 2831412 (Bankr. S.D.N.Y. Oct. 6, 2025) .......................................................... 7

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003)................................................................................ 3

*IWA Forest Indus. Pension Plan v. Textron Inc.*,
   14 F.4th 141 (2d Cir. 2021) ............................................................................................... 3

*Jones v. Pfizer, Inc.*,
   2011 WL 13257527 (S.D.N.Y. April 5, 2011) ................................................................... 3

*Kopec v. Coughlin*,
   922 F.2d 152 (2d Cir. 1992)............................................................................................. 20

*Kramer v. Time Warner*,
   937 F.2d 767 (2d Cir. 1991)............................................................................................. 11

*Melito v. Am. Eagle Outfitters, Inc.*,
   2017 WL 6541535 (S.D.N.Y. June 9, 2017) .................................................................... 21

*Meyer v. Seidel*,
   89 F.4th 117 (2d Cir. 2023) ........................................................................................... 4, 7

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2d Cir. 2013).............................................................................................. 19

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)........................................................................................... 4, 11

*SEC v. Medallion Fin. Corp.*,
   2022 WL 3043224 (S.D.N.Y. Aug. 2, 2022)............................................................ 10, 11, 13

*SEC v. Rosenberger*,
   2023 WL 1928093 (S.D.N.Y. Feb. 10, 2023)...................................................................... 3

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) .................................................................................... 21

*Sullivan v. Gelb*,
2023 WL 8236046 (S.D.N.Y. Nov. 27, 2023) ......................................................... 15

*The Lynn M. Kennis v. First Eagle Inv. Mgmt., LLC*,
2015 WL 5886178 (D. Del. Oct. 8, 2015) ................................................................. 9

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ................................................................................................... 17

*United States ex rel. Foreman v. AECOM*,
19 F.4th 85 (2d Cir. 2021) .................................................................................... 4, 18

*United States v. Strock*,
982 F.3d 51 (2d Cir. 2020) ....................................................................................... 11

*Zoidis v. T. Rowe Price Assocs., Inc.*,
2017 WL 1196585 (D. Md. Mar. 31, 2017) ............................................................... 8

**Statutes**

15 U.S.C. §78u-4(b)(3)(B) ............................................................................................ 20

**Rules**

Fed. R. Civ. P. 12 ............................................................................................... 3, 11, 19

Fed. R. Civ. P. 56 ............................................................................................... 3, 19, 20

Fed. R. Evid. 201 ................................................................................................. *passim*

**Regulations**

17 C.F.R. § 230.411 ...................................................................................................... 19

**Other Authorities**

21B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
Fed. Prac. & Proc. Evid. § 5104 (2d ed.) ............................................................... 6, 7

21B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
Fed. Prac. & Proc. Evid. § 5108 (2d ed.) ................................................................... 6

Lead Plaintiff Richard Fulford ("Plaintiff") respectfully submits this Memorandum of Law in Support of His Motion to Strike and in Opposition to Defendants' Request for Judicial Notice, or, in the Alternative, to Convert the Motion to Dismiss into a Motion for Summary Judgment.

Plaintiff moves to strike Exhibits 3, 21-24, 31-41 (the "Extraneous Exhibits") to the Declaration of David M.J. Rein in Support of Defendants' Motion to Dismiss the Second Amended Complaint (the "Rein Declaration") (ECF No. 113), as well as all references to hearsay statements derived from them and relied upon in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint (the "Motion"), and opposes Defendants' request for judicial notice of the Extraneous Exhibits.[1]

In the alternative, should the Court decide to consider the Extraneous Exhibits in resolving the Motion, it should be converted into one for summary judgment. Under Rules 12 and 56 of the Federal Rules of Civil Procedure, Plaintiff should be provided a reasonable opportunity to take discovery on the factual issues raised in the Motion.

In addition, Plaintiff moves to strike Exhibits 1 and 2 to the Rein Declaration. Exhibit 1 is an extension of Defendants' arguments in their brief in support of the Motion and is, in effect, an unauthorized enlargement of Defendants' brief. Exhibit 2 is Defendants' unverified and cherrypicked compilation of excerpts of the Fund's U.S. Securities and Exchange Commission

---

[1] The Rein Declaration was submitted by counsel for Defendants James Alpha Trust d/b/a Easterly Funds Trust, Easterly Investment Partners LLC, Easterly Securities LLC, Troy E. Willis, Charlie S. Pulire, Darrel Crate, Michael J. Montague, Neil Medugno, and A. Clayton Spencer ("Easterly Defendants"). The Easterly Defendants and Defendants Managed Portfolio Series Trust, Principal Street Partners, LLC, Benjamin J. Eirich, Brian R. Wiedmeyer, Robert J. Kern, David A. Massart, David M. Swanson, Ann Clark Johnston-Rush, as Executrix of the Estate of Leonard M. Rush and Quasar Distributors, LLC are collectively referred to as the "Defendants." Citations to "Defs. Br. at __" are to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint, ECF No. 112. Citations to "¶_" refer to paragraphs of the Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 98) (the "Complaint").

("SEC") filings and is inaccurate, confusing and misleading because it incorporates and highlights disclosures that have nothing to do with the claims alleged in the Complaint. Accordingly, Exhibits 1 and 2 should be stricken, or at least not considered by the Court in resolving the Motion.

## I.    PRELIMINARY STATEMENT

Defendants in the above captioned action (the "Action"), at the pleading stage and before any discovery, have submitted over 2,000 pages of documents, many extraneous to the Complaint, to present their own version of the facts and defenses, in an attempt to show that the claims under the Securities Act of 1933 ("Securities Act") alleged in the Complaint are time barred and that investors in the Easterly ROCMuni High Income Municipal Bond Fund (f/k/a the Principal Street High Income Municipal Fund) (the "Fund") were fully informed of the material misrepresentations and omissions alleged in the Complaint. Specifically, the Extraneous Exhibits are improperly used to dispute the allegations in the Complaint and to decide highly contested factual issues in Defendants' favor. It is improper for Defendants to litigate factual issues on a motion to dismiss without discovery. Accordingly, Plaintiff moves that the Extraneous Exhibits, and the arguments and statements that rely on them, be stricken.

The Extraneous Exhibits should not be considered by the Court at the pleading stage because: 1) the documents are not mentioned in the Complaint or relied upon, or are not "extensively" referred to in the Complaint, and should not be incorporated by reference; 2) they do not qualify for judicial notice under Rule 201 of the Federal Rules of Evidence; and 3) even assuming, *arguendo*, judicial notice is permissible, the Extraneous Exhibits are improperly used to contest the Complaint's allegations and present Defendants' version of the facts and defenses. In many instances, the Extraneous Exhibits do not state or reflect the information that Defendants assert they represent, or are otherwise unauthenticated and unreliable, and are used to draw unsupported factual inferences in Defendants' favor.

2

It is well settled that, in considering a Rule 12(b)(6) motion to dismiss, the Court must decide whether the Complaint sets forth a legally cognizable claim. The time for introducing and resolving factual disputes comes later, after both sides have had an opportunity to conduct discovery and develop a sufficient factual record. Fed. R. Civ. P. 12(d), 56. At this early stage, and in evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pled allegations in the Complaint and draw inferences from those allegations in the light most favorable to the plaintiff. *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 406 (S.D.N.Y. 2003) (Cote, J.).

Given that a motion to dismiss is "not the time to decide the merits," the Court may grant a motion to strike in order to "exercise [its] discretion to confine [its] review only to the pleadings and the briefs in support of and in opposition to the motion." *Jones v. Pfizer, Inc.*, 2011 WL 13257527, at *1 (S.D.N.Y. April 5, 2011); *SEC v. Rosenberger*, 2023 WL 1928093, at *3 (S.D.N.Y. Feb. 10, 2023) (Cote, J.) (granting motion to strike exhibits not quoted, cited or relied upon in complaint at pleading stage).

Defendants' scheme of essentially skipping to summary judgment while Plaintiff is barred from taking relevant discovery not only violates Rule 12(b)(6), but also turns the shield of the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay into a sword aimed at defeating meritorious claims alleged in the Complaint.

Should the Court choose not to exclude the Extraneous Exhibits and Defendants' arguments based upon them, the Court should convert Defendants' motion into a motion for summary judgment, which should be denied, and allow Plaintiff leave to conduct discovery before ruling on Defendants' motion to dismiss. Plaintiff has contemporaneously submitted a declaration under Rule 56 of the Federal Rules of Civil Procedure that sets forth the discovery Plaintiff requires

to oppose the Motion.

Finally, Exhibit 1 of the Rein Declaration is an improper extension of Defendants' briefing, and Exhibit 2 is inaccurate, confusing and misleading, and therefore, they should be stricken or at least not considered in resolving the Motion.

## II.    ARGUMENT

### A.    The Extraneous Exhibits Are Not Cited in, Relied on, or Integral to the Complaint.

Defendants concede that the Extraneous Exhibits are not quoted, cited, relied upon or even mentioned in the Complaint. Indeed, the Rein Declaration omits any citation to the Complaint mentioning or referring to the Extraneous Exhibits. They are not integral to the Complaint. *See* Rein Decl. ¶4.

Courts in the Second Circuit have long recognized that when deciding a motion to dismiss, a court looks to the allegations on the face of the complaint, documents attached to or incorporated by reference, or documents "'upon which [the complaint] *solely* relies and which [are] *integral to the complaint.*'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (citations omitted). "[A] document may be considered 'integral' to the complaint in a narrow set of circumstances, where the plaintiff relies heavily on the document's terms and effect in pleading his claims." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). Reliance on the terms and effect of a document in drafting a complaint is a "necessary prerequisite" to the Court's consideration of documents on a motion to dismiss, and mere notice is not enough. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Meyer v. Seidel*, 89 F.4th 117, 134 (2d Cir. 2023) (emphasizing that reliance on documents in drafting complaint is a necessary prerequisite to court's consideration at pleading stage). For these reasons alone, the Court may

4

strike the Extraneous Exhibits or decline to consider them in resolving the Motion.[2]

### B. Exhibit 3 Is Not Judicially Noticeable and Defendants Rely on It to Dispute Facts Alleged in the Complaint and for Its Truth.

Defendants heavily rely on Exhibit 3, a Morningstar editorial purportedly dated December 26, 2023, to support their assertions that investors were on notice that they possessed claims under the federal securities laws in 2023. Therefore, they argue, claims under the Securities Act are time barred. Furthermore, Defendants rely on the Morningstar editorial to dispute the Complaint's allegations that the Fund's registration statements and prospectuses contained materially false and misleading statements. Defs. Br. at 1, 8-10, 27-30.

Tellingly, Defendants do not argue that the Court may consider Exhibit 3 under the judicial notice doctrine (*see* Rein Decl. Ex. 3, ¶4, n.1), and otherwise offer no explanation why judicial notice applies. Unlike Exhibits 21-23, and 31-41, which Defendants assert are judicially noticeable and mark with an asterisk, no such mark is set forth in the Rein Declaration regarding Exhibit 3. Defendants bear the burden of showing a document is subject to judicial notice and have failed to assert it as a basis for the Court to consider Exhibit 3 in resolving the Motion.

Under Rule 201 of the Federal Rules of Evidence, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201 provides that judicial notice of "adjudicative" facts can only be taken in certain limited circumstances. An adjudicative fact is a fact "concerning the immediate parties - who did what, where, when, how and with what motive or intent." Fed. R. Evid. 201, Notes on Adv. Cmte. on Rules ("The usual method of establishing

---

[2] Plaintiff does not oppose Defendants' request for judicial notice of documents cited, quoted or relied upon in the Complaint, which are Exhibits 4-20, 25-30 to the Rein Declaration.

adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses . . . A high degree of indisputability is the essential prerequisite."). "The combined effect of Rule 201(a) and (b) is to drastically limit the occasions on which Rule 201 may be invoked." 21B *Wright & Miller's Federal Practice and Procedure* § 5104 (2d ed.).

The Rein Declaration lacks any discussion of the evidentiary requirements for the Court to grant judicial notice of Exhibit 3 (or any of the Extraneous Exhibits). Defendants' *ipse dixit* assertions fail to satisfy their burden to demonstrate judicial notice is proper. *See* 21B *Wright & Miller's Federal Practice and Procedure* § 5108 (2d ed.) (stating Rule 201(d) places burden on proponent to supply necessary information and if party fails to provide court with sufficient information, court need not notice fact); *Citgo Petroleum Corp. v. Starstone Ins. SE*, 2023 WL 7547441, at *1 (S.D.N.Y. Nov. 10, 2023), *aff'd sub nom. CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368 (2d Cir. 2025) ("[A] party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice").

Defendants fail to set forth any evidentiary foundation for the Court to determine that Exhibit 3 was generally known or is from sources whose accuracy cannot reasonably be questioned. For example, other than stating Exhibit 3 was retrieved on January 30, *2026* from a website, there is no evidence that this editorial was, in fact, available on that website at or around the time it is dated and in the form that Defendants assert, there is no evidence that it was widely available to the public at that time, that it was not restricted from view by a paywall or paid subscription requirement, and there is no evidence concerning the circulation or publicity it may have received. Accordingly, there is a high degree of disputability regarding the content, publication and dissemination of the Morningstar editorial, a fact that eviscerates any basis to judicially notice Exhibit 3. "The burden of proving 'indisputability' rests on the party requesting

6

judicial notice . . . The onus is on the proponent to identify the 'fact' that is disputed." 21B *Wright & Miller's Federal Practice and Procedure* § 5104 (2d ed.).[3]

Furthermore, no adjudicative facts are identified. Instead, Defendants offer a crabbed and misleading characterization of Exhibit 3 to dispute facts alleged in the Complaint. At best, the Morningstar editorial suggests the potential for liquidity, valuation and concentration risks—risks inherent to all mutual fund investors—but not the *probability* of wrongful conduct by Defendants that gave rise to claims under the federal securities laws. *Meyer*, 89 F.4th at 135. The Morningstar editorial, in essence, repeats the risk warnings that are set forth in Fund's registration statements and prospectuses that the Complaint alleges were materially false and misleading at that time, and warns of the general risks of investing in high yield municipal bonds, which the Complaint alleges were materially misleading. ¶¶174, 185.

Defendants' selective quotes from the Morningstar editorial are not facts that can be judicially noticed. *See In re Purdue Pharma L.P.*, 2025 WL 2831412, at *6 (Bankr. S.D.N.Y. Oct. 6, 2025) (denying judicial notice where documents related to merits of underlying claim and included facts that were not universally known, judicial notice was sought for documents in their entirety, rather than specific, adjudicative facts, and documents were introduced for their truth). Indeed, according to Exhibit 3, it is an editorial: "The author or authors do not own shares in any

---

[3] In sharp contrast, Defendants' authorities granted judicial notice to facts in widely disseminated publications, like *The Wall Street Journal* and *The Washington Post*, which documented "overwhelming notoriety" of research analysts' conflicts of interest expressed before and during the dot-com bubble. *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 382-88 (S.D.N.Y. 2003). Likewise, in *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 668 (2d Cir. 2009), the judicially noticeable fact was "already in the public domain" because it "was reported in three newspaper articles and three statements filed with the SEC."

securities mentioned in this article. Find out more about Morningstar's editorial policies." Rein

Declaration, Exhibit 3 (ECF No. 113-3 at Page 10 of 11). In ordinary parlance, the plain meaning

of editorial is that it conveys an opinion, not facts.[4] Facts may not be judicially noticed unless they

meet the "high degree of indisputability" required by Rule 201, and a fact will more likely be found

disputable if it falls on the opinion end of the fact-opinion spectrum. *See Citgo*, 2023 WL 7547441,

at *1.

Moreover, the Morningstar website referenced in the Rein Declaration contains a link to

"Terms and Conditions" that expressly disclaims the accuracy and reliability of the content found

on the website:

> **Nature of Service**
> This Website contains information, including, without limitation, statements and
> statistics that have been obtained from sources believed to be reliable but are not
> guaranteed as to accuracy or completeness. . . .
>
> **Disclaimers**
> Neither any Morningstar company nor any of its information providers can
> guarantee the accuracy, completeness, timeliness, or correct sequencing of any of
> the information on this website, including, but not limited to, information originated
> by any Morningstar company, licensed by any Morningstar company from
> information providers, or gathered by any Morningstar company from other third-
> party sources (e.g., publicly available sources). There may be delays, omissions, or
> inaccuracies in the information.

https://www.morningstar.com/company/terms-and-conditions (last visited April 21, 2026).

Courts have declined to grant judicial notice to Morningstar documents because, like here,

the documents were not referenced in the complaint and the "Terms of Use" disclaimed "accuracy,

completeness, timeliness, or correct sequencing of any of the Information." *Zoidis v. T. Rowe Price*

---

[4] *See* https://www.merriam-webster.com/dictionary/editorial (last visited April 16, 2026) (defining editorial "a newspaper or magazine article that gives the opinions of the editors or publishers, also: an expression of opinion that resembles such an article").

*Assocs., Inc.*, 2017 WL 1196585, at \*2 n.7 (D. Md. Mar. 31, 2017); *see also Evans v. Associated Banc-Corp*, 2022 WL 4638092, at \*5 (E.D. Wis. Sept. 30, 2022) (declining judicial notice of Morningstar "fact sheets" not attached to complaint and not properly subject to judicial notice due to disputes over accuracy); *The Lynn M. Kennis v. First Eagle Inv. Mgmt., LLC*, 2015 WL 5886178, at \*5 n.5 (D. Del. Oct. 8, 2015), *report and recommendation adopted sub nom. Lynn M. Kennis Tr. U/A DTD 10/02/2002 v. First Eagle Inv. Mgmt., LLC*, 2015 WL 8489956 (D. Del. Dec. 9, 2015) (declining judicial notice of Morningstar documents not capable of accurate and ready determination).

While Defendants improperly seek judicial notice for the entirety of Exhibit 3 and do not request judicial notice of adjudicative facts contained therein, the few excerpts that Defendants identify contradict their assertions that the Morningstar editorial put investors on notice of the claims alleged in the Complaint:

| Defendants' Mischaracterization of the Complaint's Allegations (Defs. Br. at 28) | Defendants' Selective Quotes from the Morningstar Editorial (Defs. Br. at 28) | The Complaint's Actual Allegations of Material Misrepresentations and Omissions |
|---|---|---|
| "Liquidity disclosures were insufficient to represent 'the risk' of holding 'illiquid securities.'" | "Fund could have 'problems' 'were it to try to liquidate those positions quickly.'" | Unknown to investors, the liquidity risk had already materialized and at that time, and contrary to the Fund's representations, more than 15% of its assets were invested in illiquid securities at that time. ¶¶93-101, 74. |

9

| Defendants' Mischaracterization of the Complaint's Allegations (Defs. Br. at 28) | Defendants' Selective Quotes from the Morningstar Editorial (Defs. Br. at 28) | The Complaint's Actual Allegations of Material Misrepresentations and Omissions |
|---|---|---|
| "Funds misrepresented that 'invest[ing] in defaulted securities was a principal and significant investment strategy.'" | "Fund's 'concentration' of 'defaulted bonds,' comprised 'more than 18% of the portfolio.'" | The Complaint alleges that the Fund's exposure to defaulted securities by the end of 2023 was approximately 35% of the Fund's assets, or over 94% greater than Morningstar's assessment, and, contrary to the Fund's representations, at that time a principal investment strategy of the Fund was to invest in defaulted securities. ¶¶148-49. |
| "Funds misrepresented risks of investing in 'securities in the same or related business.'" | "'Fund was one of the 'least diversified' 'high-yield muni' funds." | The Fund's registration statements and prospectuses represented that the Fund was diversified and failed to disclose that the risks of investing in the same or related businesses of the Jefferson Enterprise of Companies had already materialized at that time. ¶¶153-65,197-98. |

Assuming, *arguendo*, the Court considers Exhibit 3 subject to judicial notice, it should not be considered for the truth of any statements made therein. *SEC v. Medallion Fin. Corp.*, 2022 WL 3043224, at *2 (S.D.N.Y. Aug. 2, 2022). While Defendants assert that they do not offer the Morningstar editorial for the truth of the matters asserted therein, the purpose in introducing this article is for its purported truth—that the Morningstar editorial disclosed the material misrepresentations and omissions alleged in the Complaint and put investors on notice of federal securities laws claims, and that Morningstar's analysis of the Fund was factual and accurately stated. At the pleading stage, that is not a proper use of a document not cited, relied upon or referenced in the Complaint or judicial notice.

Defendants, in effect, argue the Morningstar editorial establishes not only that the material

misrepresentations and omissions alleged in the Complaint were fully disclosed, but that its statements and analysis of facts is correct, and dispositive. For example, Defendants cite the Morningstar editorial concerning the Fund's yield relative to so-called "peer" funds to assert as established fact that the Fund provided the "'highest yield'" going back to 2018. Defs. Br. at 6, 28. Notably, Morningstar does not explain what criteria was used to determine peer funds or any of its assumptions and facts regarding its analysis of yields over five years.

This tactic improperly invites the Court to draw and weigh competing inferences from the Morningstar editorial rather than to accept the allegations in the Complaint as true and test their sufficiency. *See Medallion* 2022 WL 3043224, at *2-3; *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985); *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (ruling that it was inappropriate for district court to consider report because "the complaint does not rely on the GAO report at all, so it is not 'integral'"); *DiFolco*, 622 F.3d at 113 (reversing dismissal of claim where district court "'assay[ed] the weight of the evidence' of repudiation and improperly chose between reasonably competing interpretations," including by considering document not integral to complaint). Yet "[e]ven documents that may be considered on a motion to dismiss normally should not be considered for the truth of any statements made therein." *Medallion*, 2022 WL 3043224, at *2 (striking exhibits offered for truth of matter asserted); *see also Roth*, 489 F.3d at 509 (ruling that "the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6) . . . [but] 'only to determine what the documents stated,' and 'not to prove the truth of their contents.'" (quoting *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991)).

If the Court denies the Motion, Defendants are free to make these factual arguments at trial with a fully developed record. By offering the Morningstar editorial now, however, Defendants "ignor[e] the well-established limitations that exist on a motion to dismiss." *Azurdia v. City of New*

11

*York*, 2019 WL 1406647, at *4 (E.D.N.Y. Mar. 28, 2019).

For these reasons, the Court should strike Exhibit 3 and the arguments based upon it, or at least not consider it in resolving the Motion.

C.     **Exhibit 41 Is Not Cited in the Complaint, and Defendants' Suggested Inferences Based on Exhibit 41 Misrepresent Facts and Are Misleading**

Exhibit 41 reflects charts purportedly depicting a "moderate decline" in the net asset value ("NAV") of the Fund's three share classes six days before the Morningstar editorial and ten days after. Defs. Br. at 10. None of the charts in Exhibit 41 are cited, referenced or relied upon in the Complaint.

Defendants cite an alleged decline in the price of shares of the Fund several days after the Morningstar editorial was purportedly published to support their version of the facts—that investors were on notice of the Morningstar editorial and reacted negatively to its disclosure. Defs. Br. at 10, n.6.

While stock prices may be subject to judicial notice in a fraud-on-the-market case under section 10(b) of the Securities Exchange Act of 1934, *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 166 n. 8 (2d Cir. 2000), the Complaint does not assert section 10(b) fraud claims. Moreover, even assuming, *arguendo*, the Court considers Exhibit 41, Defendants' use of the Fund's NAV per share price here is misleading. Defendants represent that shares of the Fund "moderately declined," however, shares of the Fund ***increased*** in the two trading days after the date on which the Morningstar editorial is purportedly dated. *See* Exhibit 1, at 1, 3, 5, attached to the Declaration of Jeffrey P. Campisi in Support of Lead Plaintiff's Motion to Strike and in Opposition to Defendants' Request for Judicial Notice, or, in the Alternative, to Convert the Motion to Dismiss into a Motion For Summary Judgment, dated April 23, 2026 ("Campisi Decl.").

While on December 29, 2023, three days after the date of the Morningstar editorial, the

price of the Fund's three classes of shares declined $0.02-$0.03 per share, or approximately 0.41%, the decline had nothing to do with the Morningstar editorial—the Fund distributed a dividend on December 29, 2023 that was paid from the Fund's assets, which plausibly explains the decline in NAV per share. *Id*. at 1, 3, 5. Accordingly, the inference Defendants seek from the misleading use of Exhibit 41 cannot be credited. Exhibit 41 and the arguments based upon it should be stricken or ignored in resolving the Motion.

### D. Exhibits 21-24 Are Not Cited, Referred to or Relied upon in the Complaint and Defendants Seek Factual Inferences in Their Favor

The Court should not consider Exhibits 21-24 because they are not cited, referred to or relied upon in the Complaint.[5] *See Medallion*, 2022 WL 3043224, at *2 (striking SEC filing not "cited substantially" in complaint and declining to consider filings for their truth); *Eden Alpha CI LLP v. Polished.com*, 763 F. Supp. 3d 270, 293-94 (E.D.N.Y 2025) (declining to consider SEC filings that were not integral to or incorporated by reference in complaint and were not judicially noticeable for truth of matters asserted).[6] Defendants do not cite to Exhibits 21 and 22 anywhere in the Motion, and Defendants do not argue that Exhibits 23 and 24 are "integral" to the Complaint.

Assuming, *arguendo*, the Court grants judicial notice to Exhibits 23 and 24, they cannot be offered for the truth. Defendants cite Exhibits 23-24 in support of their defense that investors were on notice of "serious risks" of the Fund. Defs. Br. at 8. However, Exhibits 23-24 say nothing about what caused the Fund to overstate its assets. Defendants seek an inference in their favor that the 2023 restatement was, in fact, a disclosure of undisclosed material negative facts alleged in the

---

[5] Contrary to the assertions in the Rein Declaration, Exhibit 24 is not cited in paragraphs 130-31 of the Complaint, and, in fact, is not mentioned in the Complaint.

[6] Defendants' authorities are in accord. *See Gray v. Wesco Aircraft Holdings, Inc*., 454 F. Supp. 3d 366, 383-84 (S.D.N.Y. 2020) (declining to grant judicial notice to SEC filings because "Plaintiff does not rely on them for his Complaint, nor are they integral to his Complaint.").

Complaint. On a motion to dismiss, without discovery regarding the 2023 disclosures and the allegations regarding the Fund's undisclosed valuation deficiencies alleged in the Complaint, Defendants' inference should not be credited.

**E.    Defendants Rely on Exhibits 31 and 32 to Dispute Facts Alleged in the Complaint**

Exhibits 31 and 32 are articles from April 2025 concerning the impact of President Trump's "Liberation Day" tariffs on the bond market. These articles are not cited, referred to or relied upon in the Complaint and Defendants do not identify any adjudicative facts.

Assuming, *arguendo*, the Court judicially notices Exhibits 31 and 32, Defendants seek to improperly introduce them for their truth that purported "market turbulence" in April 2025 caused the Fund to collapse in June 2025 and to dispute the allegations in the Complaint. Defs. Br. at 10. The Complaint alleges that the Fund's catastrophic collapse on June 13, 2025 was unique to the Fund and that the Fund's benchmark, the Bloomberg High Yield Municipal Bond Index, "was flat, indicating that the massive NAV decline was unique to the Fund and was not attributable to general market conditions or market turbulence." ¶9.

Tellingly, Defendants fail to identify any other high yield municipal bond funds (or any other mutual fund) that suffered catastrophic losses at the time the Fund collapsed. In actuality, these articles support Plaintiff's theory, stating the muni bond market offers "opportunities," "are especially appealing," and saw an "amazing" turnaround. *See* Rein Decl., Ex. 32.

While Defendants are free to assert defenses at summary judgment and at trial, Exhibits 31 and 32 and the arguments and inferences based upon them cannot be credited at the pleading stage before discovery. Accordingly, Exhibits 31 and 32 should be stricken, or at least not considered in resolving the Motion. *See Great Mill Rock LLC v. Stellex Cap. Mgmt. LP*, 2020 WL 5370626, at *2 n.1 (S.D.N.Y. Sept. 4, 2020) (stating extraneous documents, which contradict allegations in

complaint, are not considered on motion to dismiss).

### F.    Exhibits 33-35 Are Not Subject to Judicial Notice and Defendants Misrepresent their Contents.

Exhibits 33-35 are articles concerning certain issuers of bonds held by the Fund. None of these articles are cited, referred to or relied upon in the Complaint and Defendants do not explain, as is their burden, why these documents or purported facts therein are the proper subjects of judicial notice.[7] None of these articles mention the Fund or any of the Defendants, or say anything about the alleged material misrepresentations and omissions to Fund investors that gave rise to the claims alleged in the Complaint. Therefore, Exhibits 33-35 do not contain adjudicative facts. As such, Exhibits 33-35 are not judicially noticeable. *In re Manning*, 620 B.R. 199, 207 (Bankr. W.D.N.Y. 2020) ("Central to Rule 201 FRE is the notion that federal courts take judicial notice of facts, not documents.").

Defendants cite Exhibits 33-35 to improperly dispute facts and for their truth. Defendants assert that these articles show that "the Funds' liquidity risks were publicly and easily known." Defs Br. at 20. However, nothing in these articles remotely suggests that more than 15% of the Fund's assets were illiquid. Indeed, it is absurd for Defendants to assert that a reasonable investor in a purportedly diversified mutual fund could have known that the Fund had invested in excess of 15% of its assets in illiquid securities based on articles that do not mention the Fund or any of the Defendants.

The Court should see Defendants' use of Exhibits 33-35 for what it is — a distraction from the facts alleged in the Complaint. While Defendants point to limited and sporadic news reports

---

[7] *See Sullivan v. Gelb*, 2023 WL 8236046, at *1 (S.D.N.Y. Nov. 27, 2023) (stating both burden of persuading trial judge that fact is proper subject of judicial notice and showing accuracy of such fact lies on proponent of notice).

that do not mention the Fund or Defendants and are not cited in the Complaint, Defendants ignore that the Complaint alleges that a substantial portion of the Fund's illiquid assets hid information from investors behind data rooms and confidentiality agreements that were not accessible to investors, (¶¶109, 114, 120, 125, 130) or were assets for which there was no market data available, and were not publicly and easily known. ¶100. While Defendants are free to present this defense at trial after discovery, the Court should strike or at least not consider Exhibits 33-35 and the arguments based upon them in resolving the Motion.

G.    Exhibits 36-38 Are Not Judicially Noticeable and Defendants Misrepresent Facts Based on Exhibits 36-38

Exhibits 36-38 are 2022-24 municipal market reviews purportedly prepared by the Municipal Securities Rulemaking Board ("MSRB"). These documents are not cited, referred to or relied upon in the Complaint.

Without explanation, Defendants seek judicial notice of Exhibits 36-38. However, these documents are not judicially noticeable because they do not contain adjudicative facts. Defendants assert that Exhibits 36-38 show that the yield of the Fund was "nearly double typical municipal bond yields." Defs. Br. at 1. This is not an "adjudicative fact" because the assertion advanced by Defendants is disputable. For the Court to judicially notice a fact, a high degree of indisputability is an essential prerequisite. Fed. R. Evid. 201, Notes on Adv. Cmte. on Rules.

Defendants cite to a chart in Exhibit 37, a Bloomberg index of AAA-rated municipal bonds, specifically U.S. Treasury bonds and BVAL. *See* Exhibit 2 to Campisi Declaration (stating BVAL "is populated with high quality U.S. municipal bonds with an average rating of AAA from Moody's and S&P"). Defendants' argument compares apples to oranges and is misleading and confusing. It is unsurprising that a high yield municipal bond fund would have a higher yield than ultra-safe Treasury bonds or municipal bonds with a AAA credit rating. It is both misleading and

16

confusing to compare the Fund's yield to indices of the highest-rated credit instruments.

Exhibits 36-38 and the arguments based upon them cannot be credited at the pleading stage before discovery, and therefore should be stricken or at least not considered in resolving the Motion. *Eden*, 763 F. Supp. 3d at 293-94.

**H.    Exhibits 39-40 Are Introduced for Their Truth and Used to Dispute Facts Alleged in the Complaint**

Exhibits 39 and 40 are documents posted on the MSRB website by two issuers of bonds held by the Fund. Exhibits 39 and 40 are not cited, referred to or relied upon in the Complaint. Moreover, while Defendants seek judicial notice of Exhibits 39 and 40, these exhibits do not contain "adjudicative facts"—they say nothing concerning the immediate parties or who did what, where, when, how and with what motive or intent." Fed. R. Evid. 201, Notes on Adv. Cmte. on Rules.

Assuming, *arguendo*, the Court determines Exhibits 39 and 40 are judicially noticeable, they are only judicially noticeable for the fact that they exist and not for their truth. *Eden*, 763 F. Supp. 3d at 294-95. However, Defendants use Exhibit 39 (a default notice concerning one of the Fund's assets) and Exhibit 40 (an offering document concerning one of the Fund's assets) in the Motion to raise questions of fact and dispute materiality, which is not appropriate on a motion to dismiss. *See Ganino*, 228 F.3d at 162 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Defendants use these documents to argue that the information set forth in them was true and was "equally available to both parties." Defs. Br. at 26. However, the burden of disclosure under the Securities Act is on Defendants. Notably, there is no mention of the MSRB or its EMMA website in any of the Fund's registration statements or prospectuses at issue in the Complaint.

The Complaint alleges that Defendants failed to disclose a material number of defaulted securities in the Fund's 2024 Annual and Semi-Annual financial statements, which is a violation

17

of SEC disclosure rules. ¶¶150-51. Defendants do not dispute this material omission. However, Defendants rely upon Exhibit 39 in support of their defense that the Fund's failure to disclose defaulted securities in the 2024 Annual and Semi-Annual Reports is "immaterial" because defaults in these bonds had been disclosed in earlier financial statements. Defs. Br. at 26.

Defendants' assertions miss the mark and ignore economic reality. A bond's status as defaulted is not static—a default can be cured. Therefore, the absence of these defaults in the Fund's 2024 financial statements would lead a reasonable mutual fund investor to believe the Fund's portfolio had fewer defaulted securities compared to 2022 or 2023, and the Fund's assets were stronger credits than, in fact, they were. Defendants' materiality arguments to the contrary based on a document extraneous to the Complaint cannot be credited on a motion to dismiss. *See AECOM*, 19 F.4th at 108-09 (finding it was error for trial court to consider documents extraneous to complaint in its materiality analysis on motion to dismiss).

Likewise, Defendants rely on Exhibit 40, an offering document of one the Fund's bonds, to argue that information about the Fund's concentration in a single developer was "available to both parties." Defs Br. at 27. Again, Defendants use a document extraneous to the Complaint to improperly dispute the Complaint's allegations and dispute the materiality of the allegation that the registration statements and prospectuses failed to disclose that the risk from the Fund's concentration in a market sector (Jefferson Enterprise of companies) had already materialized.

Defendants' arguments, if credited, would turn the mutual fund industry upside down— from a disclosure regime under which the SEC requires disclosure comprehensible by ordinary investors in a prospectus (¶¶67-73), into a caveat emptor regime where mutual fund investors are charged with investigating every bond and are expected to conduct sophisticated financial analysis of a diversified fund. For this reason, the SEC expressly prohibits mutual fund companies from

doing what Defendants urge the Court to do. ¶73; 17 C.F.R. § 230.411 ("information must not be incorporated by reference into the prospectus . . . In any financial statements, incorporating by reference, or cross-referencing to, information outside of the financial statements is not permitted unless otherwise specifically permitted or required by the Commission's rules or by U.S. Generally Accepted Accounting Principles or International Financial Reporting Standards as issued by the International Accounting Standards Board, whichever is applicable.")

Accordingly, Exhibits 39-40 and the argument based upon them should be stricken, or at least ignored in resolving the Motion.

### III.    IF THE COURT CONSIDERS THE DISPUTED EXHIBITS, IT MUST DO SO IN THE CONTEXT OF A MOTION FOR SUMMARY JUDGMENT AND PERMIT DISCOVERY

Consideration of the Extraneous Exhibits in the manner Defendants seek to use them turns the Motion into one for summary judgment. Federal Rule of Civil Procedure Rule 12 states, in pertinent part:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

As set forth above, Defendants have presented numerous exhibits outside of the Complaint in support of the Motion in an unavailing attempt to establish that Plaintiff was on notice of Defendants' wrongful conduct and that investors were fully informed of the facts the Complaint alleges were concealed. Defendants' strategy in attaching these documents and presenting their arguments based upon purported facts contained in the Extraneous Exhibits raises clear factual disputes between the parties. These factual disputes cannot be resolved on a motion to dismiss. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202-03 (2d Cir.

2013).

Therefore, when defendants proffer documents in a motion to dismiss in support of factual determinations they ask the court to resolve, plaintiff is entitled to an opportunity to investigate, through discovery, each of the factual issues primed for resolution. *Atlantic Mut. Ins. Co. v. Lightolier*, 2002 WL 32124736, at *1 (D. Conn. Nov. 22, 2002). The Second Circuit has held that "a district court should adhere strictly" to the requirements for conversion of a motion to dismiss into a motion for summary judgment. *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1992). Rule 56 is thus available to prevent a party from being "'railroaded' by a premature motion for summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Before summary judgment may be granted, the non-moving party must have an opportunity to discover information that is essential to his opposition to the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (summary judgment may be entered against plaintiff "as long as the plaintiff has had a full opportunity to conduct discovery"). Federal Rule of Civil Procedure Rule 56(d) provides the following guidance in dealing with this situation:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

At this time, Plaintiff has not been permitted any discovery under the PSLRA's discovery stay. 15 U.S.C. §78u-4(b)(3)(B). As such, Plaintiff has had no opportunity for discovery concerning the purported notice and fact-intensive defenses raised by the Motion.

## IV.   EXHIBITS 1 AND 2 SHOULD BE STRICKEN

Exhibits 1 and 2 should be stricken, or at least not considered in resolving the motion to dismiss. Exhibits 1 and 2 are charts that Defendants submit for the "convenience of the Court."

20

Rein Dec. ¶¶2-3.

Exhibit 1 identifies the alleged false and misleading material statements and omissions in the Fund's registration statements and prospectuses and asserts "certain grounds on which Defendants seek dismissal." Rein Dec. ¶2. Exhibit 1 is an extension of Defendants' arguments in their brief and should be stricken, or at least ignored, because it is, in effect, an unauthorized enlargement of Defendants' brief. While Defendants assert that their brief complies with the Court's Revised Scheduling Order (ECF No. 104) because it contains 10,737 words, the arguments and corresponding legal and factual support found in Exhibit 1 is 22 pages and over 3,600 words and thereby violates the Court's Revised Scheduling Order (ECF No. 104) limiting Defendants to 10,750 words.

Courts routinely strike similar charts that exceed the limitations on briefs. *See e.g.*, *In re Acadia Pharms. Inc. Sec. Litig.*, 2020 WL 2838686, at *3 (S.D. Cal. June 1, 2020) (striking chart in excess of page limit that defendants made for court's "convenience"); *Melito v. Am. Eagle Outfitters, Inc.*, 2017 WL 6541535, at *1 (S.D.N.Y. June 9, 2017) (disregarding over 200 pages of material in attachments that circumvented page limits); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (granting motion to strike legal arguments set forth in reply affidavit, which had "the effect of circumventing the Court's page limits on memoranda"); *In re Paine Webber Sec. Litig.*, 1992 WL 725359, at *1 n.2 (S.D.N.Y. Sept. 18, 1992) (declining to consider exhibits "including legal arguments in the form of exhibits rather than in the [ ] memorandum of law."). Defendants' attempt to circumvent the Court-ordered limit should be rejected.

Exhibit 2, which purports to be a compilation of statements in the Fund's registration statements and prospectuses, is inaccurate, confusing and misleading. Defendants highlight and

21

underscore risk warnings concerning financial instruments called "inverse floaters" and the risks associated with them. Exhibit 2 at 2, 4, 8, 10, 14, 22, 30, 36, 40, 43, 51, 54-55 ("*The Fund may employ effective leverage through investment in Inverse Floaters*. Inverse Floaters are derivative securities that provide leveraged exposure to underlying municipal bonds. *These investments are speculative, however, and also create the possibility that income and returns will be diminished*.) (Emphasis added by Defendants). While the Rein Declaration states that the disclosures in Exhibit 2 are "related to liquidity, valuation, defaulted securities, and diversification," Exhibit 2 is inaccurate, confusing and misleading because Defendants fail to connect inverse floaters and the risks associated with them to the claims alleged in the Complaint or explain how any of the related risk disclosures have any impact on the claims alleged.

Exhibits 1 and 2 should be stricken or at least not considered in resolving the Motion.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff opposes judicial notice of the Extraneous Exhibits and respectfully requests that the Court grant his Motion to Strike the Extraneous Exhibits and the arguments in the Motion based upon them, or at least ignore them in resolving the Motion.

In the alternative, should the Court consider the Extraneous Exhibits, Plaintiff moves this Court for an order converting the Motion into a motion for summary judgment, and providing Plaintiff a reasonable opportunity to take discovery on factual issues raised by the Motion.

Finally, the Court should strike Exhibits 1 and 2 or at least not consider them in resolving the Motion.

Dated: April 23, 2026                                  Respectfully submitted,

                                                       **KAPLAN FOX & KILSHEIMER LLP**

                                                       */s/ Jeffrey P. Campisi*
                                                       Frederic S. Fox
                                                       Jeffrey P. Campisi

22

Donald R. Hall
Brandon Fox
Clara Abramson
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
F: (212) 687-7714
ffox@kaplanfox.com
jcampisi@kaplanfox.com
dhall@kaplanfox.com
bfox@kaplanfox.com
cabramson@kaplanfox.com

*Lead Counsel for Lead Plaintiff Richard
Fulford and the Proposed Class*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law contains 7,112 words and complies with the type-volume limitation of Local Civil Rule 7.1(c) of the Local Rules of United States District Courts for the Southern and Eastern District of New York, dated January 2, 2025, and the Individual Practices in Civil Cases of the Hon. Denise Cote, United States District Judge, effective December 19, 2024. I also certify that this brief complies with the typeface and type style requirements of Local Civil Rule 7.1(b)(1)(2)(3).

/s/ *Jeffrey P. Campisi*
Jeffrey P. Campisi

**CERTIFICATE OF SERVICE**

I, Jeffrey P. Campisi, hereby certify that, on April 23, 2026, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

/s/ *Jeffrey P. Campisi*
Jeffrey P. Campisi

24