**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTERLY ROCMUNI HIGH INCOME MUNICIPAL BOND FUND | 25-cv-6028 (DLC) |

**DECLARATION OF JEFFREY P. CAMPISI IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO STRIKE AND IN OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, OR, IN THE ALTERNATIVE, TO CONVERT THE MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT**

I, Jeffrey P. Campisi, declare as follows:

1.      I am a partner of the law firm of Kaplan Fox & Kilsheimer LLP, lead counsel for Lead Plaintiff Richard Fulford ("Plaintiff"), and I am admitted to this Court and am in good standing.

2.      I submit this declaration on personal knowledge and in support of Plaintiff's Motion to Strike and in Opposition to Defendants' Request for Judicial Notice, or, in the Alternative, to Convert the Motion to Dismiss into a Motion for Summary Judgment ("Motion to Strike").[1]

3.      Pursuant to Fed. R. Civ. P. 56(d) and as detailed herein, Plaintiff is currently unable to completely respond to the evidentiary material contained in exhibits attached to the Declaration of David M.J. Rein Submitted in Support of Defendants' Motion to Dismiss the Second Amended Complaint, dated March 23, 2026, ECF No. 113 ("Rein Declaration") that are cited and relied upon in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint, ECF No. 112 ("Motion").

4.      Exhibits 3, 21-24, and 31-41 of the Rein Declaration (the "Extraneous Exhibits") are referenced in an attempt to show that Plaintiff and members of the proposed Class were on notice of the wrongdoing alleged in the Second Amended Complaint for Violation of the Federal Securities Laws ("Complaint"), and that investors were fully informed about the information Plaintiff alleges the Fund's registration statements and prospectuses concealed. Defendants cite these exhibits for the sole purpose of proving substantive factual matters in their favor and

---

[1] "Defendants" means James Alpha Trust d/b/a Easterly Funds Trust, Easterly Investment Partners LLC, Easterly Securities LLC, Troy E. Willis, Charlie S. Pulire, Darrel Crate, Michael J. Montague, Neil Medugno, and A. Clayton Spencer, Managed Portfolio Series Trust, Principal Street Partners, LLC, Benjamin J. Eirich, Brian R. Wiedmeyer, Robert J. Kern, David A. Massart, David M. Swanson, Ann Clark Johnston-Rush, as Executrix of the Estate of Leonard M. Rush, and Quasar Distributors, LLC.

disputing facts. In submitting the Extraneous Exhibits, Defendants are attempting to litigate the merits of Plaintiff's claims, and not whether the Complaint adequately states a claim.

5.     As set forth in Plaintiff's Motion to Strike, the Extraneous Exhibits should be stricken and should not be considered for the truth of the matters asserted. If the Court considers the Extraneous Exhibits in the manner requested by Defendants, then Plaintiff requests the Court convert Defendants' Motion into one for summary judgment under Fed. Rule Civ. P. 56, and allow Plaintiff the opportunity to conduct discovery on the disputed issues pursuant to Rule 56(d).

6.     This declaration sets forth: (a) a brief summary of the procedural history; (b) the status of discovery to date; (c) the Extraneous Exhibits that Plaintiff moves to strike; (d) factual disputes raised by Defendants' unauthenticated exhibits; and (e) a description of the discovery Plaintiff seeks in accordance with this Court's discretion to "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed R. Civ. P. 56(d).

## I.     PROCEDURAL HISTORY

7.     On July 22, 2025, the above-captioned action (the "Action") was filed. ECF No. 1.

8.     On October 9, 2025, the Court appointed Mr. Fulford as Lead Plaintiff and set a schedule for an amended complaint and related briefing. ECF No. 68.

9.     On December 5, 2025, Plaintiff filed the Consolidated Complaint for Violations of the Federal Securities Laws. ECF No. 75.

10.    On January 27, 2026, the Court granted Plaintiff's request to lift the stay of discovery under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(b)(3)(B) ("PSLRA"), for the limited purpose of serving document preservation subpoenas on certain nonparties. ECF No. 92. No document production is required and, to date, no party or nonparty has produced documents.

11. On January 30, 2026, Defendants James Alpha Trust d/b/a Easterly Funds Trust, Managed Portfolio Series Trust, Easterly Investment Partners LLC, Principal Street Partners, LLC n/k/a Calydon Capital, LLC, Troy E. Willis, Charlie S. Pulire, Benjamin J. Eirich, Brian R. Wiedmeyer, Robert J. Kern, David A. Massart, David M. Swanson, Darrel Crate, Michael J. Montague, Neil Medugno, A. Clayton Spencer, Quasar Distributors, LLC, and Easterly Securities LLC filed a motion to dismiss under Rule 12(b)(6). ECF Nos. 94-96.

12. On February 20, 2026, Plaintiff filed the Complaint. ECF No. 98.[2]

13. On March 23, 2026, Defendants filed the Motion. ECF Nos. 111-13.

14. The Rein Declaration attaches 41 exhibits, comprised primarily of material that was not referenced in or attached to the Complaint. None of the exhibits have been authenticated.

## II.    STATUS OF DISCOVERY

15. As of this date, the discovery stay imposed under the PSLRA remains in place. Based on the fact that Plaintiff has been precluded from obtaining any discovery to date, I believe substantial discovery is needed before Plaintiff can fully respond to the factual assertions raised by the Defendants' Motion, should the Court convert the motion to one for summary judgment.

## III.    THE DISPUTED EXHIBITS

16. The following Extraneous Exhibits are not referenced in the Complaint, not proper subjects of judicial notice and are offered as inadmissible hearsay to resolve factual disputes:

Exhibit 3:     Eric Jacobson, *6 Critical Lessons for Bond Investors*, MORNINGSTAR.

Exhibit 21:    Semi-Annual Report of MPS Trust, dated February 28, 2023, filed on Form N-CSR with the SEC on May 5, 2023 (excerpts).

Exhibit 22:    Restated Semi-Annual Report of MPS Trust, dated February 28, 2023, filed

---

[2] The Complaint added Ann Clark Johnston-Rush, as Executrix of the Estate of Leonard M. Rush, Deceased ("Rush") as a substitute defendant due to the passing of Mr. Rush. ECF No. 84.

on Form N-CSR with the SEC on December 27, 2023 (excerpts).

Exhibit 23:    Notification of Late Filing of MPS Trust, dated November 8, 2023, filed on Form 12b-25 with the SEC on November 8, 2023.

Exhibit 24:    Annual Report of MPS Trust, dated August 31, 2023, filed on Form N-CSR with the SEC on November 24, 2023 (excerpts).

Exhibit 31:    *Aashna Shah* et. al.*, Muni Rout Drafts on After Market Says Worst Day in 31 Years*, BLOOMBERG.

Exhibit 32:    Amey Stone, Tax and Tariff Fears Have Rocked Municipal Bonds. Why They're Still Appealing, BARRONS.

Exhibit 33:    Richard Ruelas, Owners of Mesa sports facility Legacy Park, already in default, file for bankruptcy, ARIZONA REPUBLIC.

Exhibit 34:    Richard Lehmann, Proton Therapy Center Bonds - Not A Pretty Picture, FORBES.

Exhibit 35:    *PureCycle: "It Looks As Bad As It Smells,"* BLEECKER ST. RESEARCH.

Exhibit 36:    John Bagley & Marcelo Vieira, *2022 Municipal Market Year in Review*, Municipal Securities Rulemaking Board.

Exhibit 37:    John Bagley & Marcelo Vieira, *2023 Municipal Market Year in Review*, Municipal Securities Rulemaking Board.

Exhibit 38:    John Bagley *et. al.*, *2024 Municipal Market Year in Review*, Municipal Securities Rulemaking Board.

Exhibit 39:    *Notice That Principal And Interest Due February 14, 2024 Will <u>Not</u> Be Paid*, UMB Bank, N.A. (Feb. 14, 2024);

Exhibit 40:    Limited Offering Memorandum filed by the City of Falmouth, Kentucky, Solid Waste Disposal Facilities Revenue Bonds (excerpts).

Exhibit 41:    Historic prices for each class of the Funds' shares taken from Yahoo! Finance.

## IV.    THE FACTUAL DISPUTES

17.    The Complaint alleges (i) strict liability and negligence claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") against Defendants for the registering, offering, and selling shares or soliciting the sale of shares of the Easterly ROCMuni

4

High Income Municipal Bond Fund (f/k/a the Principal Street High Income Municipal Fund) (the "Fund") pursuant to materially false and misleading registration statements and prospectuses; and (ii) negligence claims under Section 14 and Rule 14a-9, and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against certain of the Defendants. Compl., ¶¶2-3.

18.     The Complaint further alleges that the Fund's registration statements and prospectuses represented: 1) that no more than 15% of the Fund's assets were illiquid assets, which was not true and were as high as 45% of the Fund's assets, 2) that the Fund's assets were fairly valued based on market data, which was materially misleading because the Fund utilized a pricing service that failed to account for odd lot market transactions that reflected the current value of the Fund's assets and caused the value of the Fund's assets to be materially overstated, 3) the Fund's investment in defaulted securities was not a significant or principal investment strategy, when, in fact, it was a principal investment strategy as defined by the SEC, and 4) the Fund represented its concentration in a market sector was a hypothetical future risk, when, in fact, the risk had already materialized. *Id.* ¶¶167-98.

19.     Defendants submit the Extraneous Exhibits to prove that Plaintiff and members of the Class were on notice of the claims alleged because the undisclosed material negative facts alleged in the Complaint were, according to Defendants, disclosed. Defendants' therefore improperly dispute facts.

20.     The Extraneous Exhibits, however, fail to disclose the alleged material misstatements and omissions in the Fund's registration statements and prospectuses that caused the Fund to collapse in June 2025.

21.     In *Meyer v. Seidel*, 89 F.4th 117, 135 (2d Cir. 2023), the United States Court of Appeals for the Second Circuit, in discussing the quality of information necessary to trigger inquiry

notice in a securities action can be established only where the "triggering data ... relates directly to the misrepresentations and omissions" alleged. *Id*. at 135 (citation omitted).

22.    Defendants rely on documents outlining purported bond market turbulence in an effort to show that other factors were potentially responsible for the Fund's collapse at the end of the Class Period. Defs. Br. at. 10. Whether or not intervening factors contributed to plaintiffs' losses, and by what degree, is a matter subject to proof at trial and is not to be decided on a motion to dismiss. *Emergent Capital Investment Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).

23.    Defendants use these same documents to dispute materiality. Defs. Br. at 28-29.

24.    Resolution of the arguments raised by Defendants and supported by the Extraneous Exhibits require intensely fact-specific determinations.

25.    Assuming *arguendo* that the Extraneous Exhibits are not stricken, due to the factual disputes raised, Plaintiff would respectfully request a continuance to take discovery from Defendants and nonparties, including requests for production of documents, interrogatories, requests for admission and depositions. Because Plaintiff has had no discovery to date, Plaintiff cannot be certain what would be an exhaustive list of necessary discovery. Therefore, Plaintiff proposes a document production that includes, at a minimum, the following:

A.    **From Defendants:**

    i.    Documents reflecting the Fund's methodology for determining the liquidity of the Fund's assets and compliance with its represented limitations on illiquid assets.

    ii.    Document concerning the Fund's assessment of defaults among its portfolio of assets and facts and circumstances concerning the omission of defaulted bonds in the Fund's financial statements incorporated by reference into its 2024 Semi-Annual and Annual Reports.

    iii.    Documents concerning the Fund's assessment of its exposure and

risk to the Fund due to the Fund's holdings of assets connected to the Jefferson Enterprise of companies, and assessment of the impact the defaults and distress had on the Fund.

iv.    Documents available to bondholders via a "data room" for each bond held by the Fund, including any monthly, quarterly, semi-annual or annual reports, audited and unaudited financial statements, communications from obligors or bond trustees, summations of bondholder calls or bondholder actions including any waivers of debt service or indenture covenants, and consideration of foreclosure and sale of assets.

v.    Documentation of bids received and block size related to the bid including institutions who provided the bid on any bond held in the Fund.

vi.    Documentation of due diligence performed related to the selection or continued use of the pricing service(s) used by the Fund for the bond valuation and NAV calculation process, and their treatment or consideration of odd lot transactions.

vii.    Document reflecting which bond pricing services the Fund used as a primary and secondary source of daily bond pricing and if not for the entire period, when were they used.

viii.    Documents concerning the Fund's pricing procedure.

ix.    Minutes or notes of the Fund's pricing committee meetings including members in attendance and any requests for more information and decisions made during the meetings.

x.    Documentation regarding any verbal or written communications to any bond pricing service where bond pricing on any bond held by the Fund was discussed, challenged or otherwise communicated.

xi.    Communications to and from the Fund's auditors including memorandums, inquiries or requests.

xii.    Documents concerning the facts and circumstances that gave rise to Fund's restatement in 2023.

xiii.    Meeting minutes or notes involving the Fund's auditors.

**B.    From Pricing Services:**

i.    Documents concerning the methodology for determining the value of the Fund's assets and treatment or consideration of odd lot transactions.

ii.      Documentation relating to stale or unchanged prices of the Fund's assets.

iii.     Documents reflecting any challenges to valuations provided concerning the Fund's bonds.

**C.     From Morningstar:**

i.       All versions of the editorial depicted in Exhibit 3, including drafts, earlier or later versions, and any saved, stored, or archived copies.

ii.      Documents showing whether and when the editorial was ever posted or made available on a website in any form.

iii.     Documents showing when the editorial was created, posted, published, changed, taken down, or removed.

iv.      Documents showing whether the editorial was ever viewed by anyone, including records showing the number of views, the dates of those views, or any activity related to the editorial.

v.       Emails, messages, or other communications among Morningstar employees, staff, or contractors regarding writing, editing, posting, publishing, reviewing, or removing the editorial.

vi.      Documents relating to how the editorial was handled on Morningstar's website, including documents showing who created, edited, approved, posted, or removed the editorial.

vii.     Documents showing the history of any changes made to the editorial, including when changes were made and who made them.

viii.    Documents showing whether the editorial was shared with the public through email, newsletters, social media, or any other means.

ix.      Complaints, takedown requests, or other communications Morningstar received about the editorial, including any request that it be removed, corrected, or otherwise altered.

x.       Copies of any backups, archived files, or stored versions of the website that contains the editorial or any records relating to it.

xi.      Documents identifying the people involved in writing, editing, approving, posting, reviewing, or removing the editorial.

xii.     Documents showing whether the editorial was ever behind a paywall, required a subscription or login to view, or was in any way restricted so that only certain people could access it, including when

8

> any such restrictions were added or removed and who was able to see the editorial.

> xiii.    Documents showing any effort by Morningstar or Morningstar staff to contact, interview, request comments from, or fact-check information with the Fund's management, including communications sent to or received from the Fund, notes of phone calls or meetings, fact-checking materials, and any drafts of questions or requests for comment.

**D.    From Expert Witnesses:**

Expert witness opinion evidence on damages and causation issues, including but not limited to, the decline of the Fund's NAV at the end of the Class Period.

26.    Additionally, Plaintiffs proposes at least the depositions of Defendants Troy E. Willis, Charlie S. Pulire, Benjamin J. Eirich, Brian R. Wiedmeyer, Robert J. Kern, David A. Massart, David M. Swanson, Darrel Crate, Michael J. Montague, Neil Medugno, and A. Clayton Spencer concerning the issues set forth above in paragraph 25(A); depositions of as yet unknown personnel from the Easterly Trust and the MPS Trust (including persons most knowledgeable) concerning the issues set forth above in paragraph 25(A); depositions of as yet unknown third party pricing services (including persons most knowledgeable) concerning the issues set forth above in paragraph 25(B); depositions of the author of the Morningstar editorial and as yet unknown personnel from Morningstar (including persons most knowledgeable) concerning the issues set forth above in paragraph 25(C); and depositions of as yet unknown damage and causation expert witnesses concerning the issues set forth in paragraph 25(D).

27.    Exhibit 1 to the Rein Declaration, ECF No. 113-1, contains approximately 3,627 words, which was determined by staff at Kaplan Fox under my direction on or around March 27, 2026 by retrieving the .pdf file filed on the Court's CM/ECF System as ECF No. 113-1 and converting it to a .doc file format and relying on the word count of the word-processing program MS Word.

28.    Exhibit 2 to the Rein Declaration, ECF No. 113-2 contains approximately 47,964 words, which was determined by staff at Kaplan Fox under my direction on or around March 27, 2026 by retrieving the .pdf file filed on the Court's CM/ECF System as ECF No. 113-2 and converting it to a .doc file format and relying on the word count of the word-processing program MS Word.

29.    Attached hereto are true and correct copies of the following documents cited in Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, or Lead Plaintiff's Memorandum of Law in Support of His Motion to Strike and in Opposition to Defendants' Request for Judicial Notice, or, in the Alternative, to Convert the Motion to Dismiss into a Motion for Summary Judgment:

Exhibit 1:    Chart showing Fund NAV and dividend payments obtained from Bloomberg by staff at Kaplan Fox under my direction on or around February 11, 2026, with highlighting added by counsel;

Exhibit 2:    Index of U.S. Treasury bonds and BVAL, a Bloomberg index of AAA-rated municipal bonds obtained from Bloomberg by staff at Kaplan Fox under my direction on or around February 11, 2026.

## V.    CONCLUSION

30.    Because there has been no discovery produced in the Action, it is impossible at this early stage for Plaintiff to identify *all* discovery that will be necessary to adequately respond to the factual issues raised by Defendants. Therefore, I set forth herein the discovery I currently believe is necessary to properly and adequately oppose Defendants' arguments. As document productions, discovery responses and deposition testimony occur, additional discovery needs will likely unfold.

31.    I believe that the discovery identified in this declaration and Plaintiff's

accompanying Motion to Strike will create genuine issues of material fact, if the Court converts Defendants' motion to dismiss into one for summary judgment.

I declare under penalty of perjury that the foregoing is true and correct and executed this 23rd day of April, 2026, at New York, New York.

/s/   *Jeffrey P. Campisi*
Jeffrey P. Campisi

11